Eldred S. **WALLACE** and Jeannie R. Wallace, John R. DeBiase and Elizabeth C. DeBiase, Appellants,

v.

Richard A. **KING**, Chief, Fairfax County Police Department, Robert A. Lawrence, Carla L. Helwig, Ralph W. Gardner, William J. Woodill, Richard H. Reeder, Frank Scott, Appellees.

No. 78–1399.

United States Court of Appeals, Fourth Circuit.

Reargued Oct. 4, 1979.

Decided July 1, 1980.

---

John McNally, Alexandria, Va. (Murphy, McGettigan, McNally & West; Jonathan Shapiro, Zwerling & Shapiro; Alexandria, Va., Stephen W. Bricker, American Civil Liberties Union of Virginia, Richmond, Va., on brief), for appellants.

Jack B. Stevens, Alexandria, Va. (Howard, Stevens, Lynch, Cake & Howard, P. C., Alexandria, Va., on brief), for appellees.

Before HALL and PHILLIPS, Circuit Judges, and THOMSEN *, Senior District Judge.

THOMSEN, Senior District Judge.

Plaintiffs/appellants are two married couples whose residences were briefly searched without search warrants by local

* Of the District of Maryland, sitting by designation.

police officers seeking to apprehend a woman named in a valid arrest warrant. She was being sought in connection with her refusal to obey a court order in a domestic relations matter involving the custody of her infant child.

Plaintiffs filed suit under 42 U.S.C. § 1983 against the officers who conducted the searches and the chief of the Police Department of Fairfax County, Virginia, seeking money damages as well as declaratory and injunctive relief. They sought to have the district court declare unconstitutional a longstanding, unwritten policy of the department which authorized police officers to search any place without a search warrant when they had a reasonable belief that a person named in an arrest warrant would be found there. Following extensive discovery the district court entered summary judgment for defendants on all claims. Plaintiffs appealed.

After hearing argument in February 1979 and reargument in October 1979, we withheld decision of these appeals pending a decision of the Supreme Court in *Payton v. New York* and *Riddick v. New York*, in which probable jurisdiction had been noted on December 11, 1978 (439 U.S. 1044, 99 S.Ct. 718, 58 L.Ed.2d 703, oral argument had been heard and the case set for reargument (441 U.S. 930, 99 S.Ct. 2049, 60 L.Ed.2d 658). The reargument resulted in four opinions filed on April 15, 1980, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639.

*Payton* involved an entry by the police officers into the home of a person suspected of a felony, when the police had obtained neither an arrest warrant nor a search warrant. The Court held that the Fourth Amendment, made applicable to the States by the Fourteenth Amendment, prohibits the police from making a warrantless and nonconsensual entry into a suspect's home, in the absence of exigent circumstances, in order to make a routine felony arrest.

## I.

This case arises from the unsuccessful attempts of various Fairfax County police officers to execute a bench warrant for the arrest of Susan Wallace Swain, which had been issued in connection with Mrs. Swain's divorce suit as a result of her failure to appear in court with her infant child. Plaintiffs Eldred and Jeannie Wallace are Mrs. Swain's parents and reside in Fairfax County. Plaintiffs John R. and Elizabeth C. DeBiase are friends of the Wallaces who also reside in Fairfax County, some distance away from the Wallace residence.

### A. Search of the Wallace Home.

The Wallaces are in their mid-fifties. Mr. Wallace is a long-term civil service employee of the Department of the Army; Mrs. Wallace is a housewife. Mrs. Swain had not lived with the Wallaces for a number of years but occasionally stayed with them when problems arose with her husband.

On October 6, 1976, the Fairfax police received a phone call from Mrs. Swain's estranged husband. He informed them that Mrs. Swain was at her parents' home and, upon meeting two officers at the residence, identified a car parked outside as belonging to his wife. The car was actually licensed in the Wallaces' name.

At approximately 8:30 p. m. Officers Robert Lawrence and Carla Helwig were admitted into the Wallace residence, without demur. Officer Lawrence announced that he wanted to search the home for Mrs. Swain because he had a bench warrant for her arrest and had information indicating that she was on the premises. Mr. Wallace asked the officers if they had a search warrant for his home. One of the officers responded that the arrest warrant itself was sufficient authority for the search.

The search was a walk-through which took only a few minutes. Mrs. Wallace showed Officer Helwig various rooms and closets and, at Officer Helwig's request, opened doors and turned on lights as the two went through the house.

Both officers concede that they had ample time to go to a magistrate and secure a search warrant. They knew that the arrest warrant for Mrs. Swain arose from a domestic relations matter involving the wel-

fare of a young child, but they had not been advised of any urgent or dangerous circumstances requiring immediate arrest.

The parties dispute whether the officers were hostile in conducting the search. The Wallaces claim that the emergency lights on the officers' vehicle were flashing outside during the incident, but the police deny this.[1] Mr. Wallace claims that his asthmatic condition was aggravated by the search and attendant circumstances, causing him to miss work the following day.

B. Search of the DeBiase Home

About one month after the Wallace home was searched, on November 10, 1976, the Fairfax police were again contacted by Mr. Swain. He telephoned the police station to complain that the department was dilatory in locating his wife and baby. He left a number where he could be reached; Sergeant Frank Scott telephoned the number and talked with a man identifying himself as Mr. Swain.

Swain informed Scott that he had seen his wife enter the DeBiase residence. (The police had previously made inquiry about Mrs. Swain at this residence three days after the Wallace home was searched, but made no attempt to search the DeBiase home at that time.) Sergeant Scott had information on a note from another police officer indicating there was some reason to suspect that Mr. Swain was using the department to harass people in the county. Scott confronted Swain with this allegation and informed him that, if it were true, Scott would seek legal action against him. Swain denied the allegation and, without further inquiry, Scott ordered the DeBiase residence searched.

At about 6:00 p. m. Officers William Woodill and Ralph Gardner arrived at the DeBiase home. Mrs. DeBiase, a fifty-three year old housewife, and her daughter were home at the time. They saw the police outside and Mrs. DeBiase went to the door as the officers knocked. They stated they would like to ask her some questions and she invited them inside. Officer Gardner

then stated that the department had information that Mrs. Swain might be living there; Mrs. DeBiase denied this and asked who had supplied such information. Gardner identified Mr. Swain as the source and then stated that he wanted to search the house. Apparently Mrs. DeBiase did not question Mr. Swain's reliability, but, with knowledge of the earlier search of the Wallace residence, she objected to the search and demanded to see a search warrant. She was told that the arrest warrant was sufficient authority for the search.

Mrs. DeBiase claims that during the search two cruisers and a paddy wagon were parked outside with lights flashing (see n. 1 supra) and that her pre-existing stomach ulcer was aggravated by the search and attendant circumstances, causing her to seek medical treatment.

II.

■ Plaintiffs argue that the department's policy, which authorized officers to search any place without a search warrant when they had a reasonable belief that a person named in a valid arrest warrant might be found there, contravened the "particularity" requirement of the fourth amendment and undercut the rationale upon which fourth amendment jurisprudence is founded. The primary abuse which the fourth amendment was intended to eliminate was the dreaded general warrant which authorized indiscriminate searches of whole neighborhoods; plaintiffs herein contend that if the police alone may decide whether any particular place will be searched, the potential for this abuse is facilitated. See *Lankford v. Gelston*, 364 F.2d 197 (4 Cir. 1966).

In *United States v. Phillips*, 593 F.2d 553 (4 Cir. 1978), the premises searched had been a regular rendezvous used by members of a narcotics distribution ring in furtherance of their unlawful activities; this court held that under the facts of that case "the agents were entitled to obtain entry, especially when armed with arrest warrants, despite the absence of a search warrant," in

---

1. Even if the lights were flashing, that does not show hostility on the part of the officers.

order to make a criminal arrest. The opinion cited and quoted with approval passages from *Rodriguez v. Jones*, 473 F.2d 599, 606 (5 Cir.), cert. denied, 412 U.S. 953, 93 S.Ct. 3023, 37 L.Ed.2d 1007 (1973), including quotations from the Restatement (Second) of Torts.

The issue presented by the instant case— whether a search warrant is a constitutional prerequisite to every search for a person named in an arrest warrant on the premises of a third person—has not been decided by the Supreme Court or by this Circuit. In *Payton* the Court noted that neither of the cases before it "raises any question concerning the authority of the police, without either a search or arrest warrant, to enter a third party's home to arrest a suspect." 445 U.S. at 583, 100 S.Ct. at 1378. However, much of the discussion in the majority opinion bears on the proper answer to the question presented in this case, which we specifically refrained from deciding in *Lankford.*

▮ As the Court noted in *Payton*, the circuits have not been uniform in their approach to the problem presented by the instant case. Compare *United States v. Brown*, 467 F.2d 419, 423 (D.C. Cir. 1972), and *United States v. McKinney*, 379 F.2d 259, 263 (6 Cir. 1967), with *United States v. Ford*, 553 F.2d 146, 159 n. 45 (D.C. Cir. 1977), *Fisher v. Volz*, 496 F.2d 333, 341–43 (3 Cir. 1974), *Government of the Virgin Islands v. Gereau*, 502 F.2d 914, 928 (3 Cir. 1974), and *United States v. Cravero*, 545 F.2d 406, 415, 421 (5 Cir. 1976). Common to all those opinions, however, is the requirement that, for the search to be constitutionally valid, not only must the officers have probable cause to believe the person named in the arrest warrant is on the premises of the third person, but there must also exist an appropriate exception to the warrant requirement, e. g., consent of the owner or occupier of a dwelling unit or exigent circumstances, which did not exist in this case. It is not practical, in this opinion, to list all the circumstances which may justify such entry. Exigent circumstances may properly include hot pursuit or justifiable fear of injury to persons or property if the arrest is delayed. Whether the entry sought to be made is in an area where a magistrate is or is not readily available, and whether another officer is available to keep watch on the premises while an officer seeks a search warrant, are among the factors which may be considered in appropriate cases. The nature of the premises sought to be entered and whether the officers have reasonable cause to believe that the subject of the arrest warrant owns or resides therein are other factors. Reasonable or probable cause to believe that a person for whom an arrest warrant has been issued is on the premises, standing alone, is not sufficient. Although *Payton* held that an arrest warrant requires that a suspect "open his doors to the officers of the law," that holding was specifically limited to the "dwelling in which the suspect lives." 445 U.S. at 603, 100 S.Ct. at 1388. An arrest warrant indicates only that there is probable cause to believe the suspect committed a crime; it affords no basis to believe that the suspect is in a stranger's house. *Fisher v. Volz*, 496 F.2d at 341. Injunctive and declaratory relief should be issued by the district court in conformity with the principles stated herein.

On the other hand, law enforcement officers should not be held personally liable for monetary damages because they have followed the policy or instructions of their superiors, where the controlling law had not been authoritatively decided by the Supreme Court, the appropriate United States Court of Appeals, or the highest court of the state, where the officers have acted in good faith, and where the searches were conducted in a reasonable manner, as shown by the evidence in this case. Insofar as the judgment below absolved the defendants from monetary liability to the plaintiffs, it should be affirmed.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR THE ISSUANCE OF DECLARATORY AND INJUNCTIVE RELIEF IN CONFORMITY WITH THIS OPINION.

K. K. HALL, Circuit Judge, dissenting:

I agree with the majority that the officers acted in good faith and that the searches were conducted in a reasonable manner. However, I do not agree that a valid arrest warrant and probable cause are constitutionally insufficient to justify a search for the suspect upon a third person's premises. The majority's additional requirement of a search warrant in such circumstances causes me grave concern, and I must respectfully dissent.

The broad arguments advanced by the plaintiffs were considered and rejected in *United States v. Phillips*, 593 F.2d 553 (4th Cir. 1978). *Phillips* involved the search of a residence which federal officers had observed for about one year to be a gathering place for members of a narcotics distribution ring. After obtaining valid arrest warrants, the policemen sought to execute the warrants at the residences. Though no one responded to their knocks at the door, the officers heard noises within the house. They forcibly entered and proceeded to search for the named suspects. During their search, the officers seized evidence lying in plain view which was later used at trial.

The *Phillips* defendants objected to admission of the evidence on the ground that it was illegally seized, and raised the issue on appeal. We held that the search was reasonable and that it did not violate the fourth amendment, although no search warrant was obtained. We did so on the ground that it has long been established that police officers may lawfully enter a dwelling, with force if necessary, to execute a valid arrest warrant, where they reasonably believe that the named suspect is on the premises. *Id.* at 557; *Rodriguez v. Jones*, 473 F.2d 599, 604–06 (5th Cir.) *cert. denied*, 412 U.S. 953, 93 S.Ct. 3023, 37 L.Ed.2d 1007 (1973); *United States v. Brown*, 467 F.2d 419, 423 (D.C. Cir. 1972) (Mr. Justice Clark); *United States v. Cravero*, 545 F.2d 406, 421 (5th Cir. 1976) *cert. denied, sub nom. Cook v. United States*, 430 U.S. 983, 97 S.Ct. 1679, 52 L.Ed.2d 377 (1977); *United States v. McKinney*, 379 F.2d 259, 262–63 (6th Cir. 1967); *Michael v. United States*, 393 F.2d 22, 32 (10th Cir. 1968). *See Lankford v. Gelston*, 364 F.2d 197, 205–06 (4th Cir. 1966); *Vance v. North Carolina*, 432 F.2d 984, 990–91 (4th Cir. 1970).[1]

I see no necessity to create an exception to this rule for third-party residences because a magistrate's evaluation of probable cause prior to such a search will have no appreciable effect upon the privacy interests to be protected. The search is intrusive upon those privacy interests whether or not exigent circumstances are present or a search warrant is obtained. *Lankford v. Gelston*, 364 F.2d at 206. The resident's privacy interest centers primarily on the manner and extent of the search conducted—a matter unaffected by a warrant requirement since it cannot be reviewed before the fact.

Also, the search for a person named in an arrest warrant presents inherent exigencies not present in the search for objects. *See Vance v. North Carolina*, 432 F.2d at 990–91. Named suspects frequently pose a threat of danger to the police and to the public, necessitating the swiftest possible execution of arrest warrants. The suspect's very failure to present himself to the police may, in a practical sense, be viewed as an exigency justifying an exception to the warrant requirement of the fourth amendment. In most cases other circumstances, such as the gravity of the crime or the stability and dangerous propensities of the

---

1. In 1975, twenty-five states had statutes authorizing warrantless entries to arrest in residences, absent exigent circumstances. Note, "Warrantless Entry to Arrest: A Practical Solution to a Fourth Amendment Problem," 1978 U.Ill.L.F. 655, 668–69. Several of our sister circuits have recently held that *per se* violations of fourth amendment rights occur when police officers enter residences with neither an arrest warrant nor a search warrant, absent exigent circumstances. *United States v. Killebrew*, 560 F.2d 729, 733 (6th Cir. 1977); *United States v. Reed*, 572 F.2d 412, 420–23 (2nd Cir.) *cert. denied sub nom. Goldsmith v. United States*, 439 U.S. 913, 99 S.Ct. 283, 58 L.Ed.2d 259 (1978). *Contra, United States ex rel. Wright v. Woods*, 432 F.2d 1143, 1145–46 (7th Cir. 1970).

suspect, are present when the suspect eludes the police. *See United States v. McKinney,* 379 F.2d at 263; *United States v. Brown,* 467 F.2d at 424.

In this case no exigent circumstance appeared. Although the custody and welfare of a young child was at issue, no felony was suspected. The suspect was wanted for failure to appear in court. She was not considered unstable or dangerous. Nevertheless, I think no purpose would have been served by requiring the officers here to make a separate trip to the magistrate each time they formed a reasonable belief as to her presence in a particular dwelling. To impose such a rule would have hampered them in their duties while giving no appreciable benefit to the residents of the dwellings.

I hasten to add that any search conducted under these circumstances may be challenged in federal tort actions by a resident of the dwelling searched, on the ground that an officer's belief was unreasonable or that the conduct of the search was unreasonable. 42 U.S.C. § 1983. *See Hill v. Rowland,* 474 F.2d 1374 (4th Cir. 1974); *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). The reasonable belief standard is not without teeth. *See United States v. Cravero,* 545 F.2d 406, 421 (5th Cir. 1976):

> The test is properly framed in terms of reasonable belief. Probable cause is essentially a concept of reasonableness, but it has become a term of art in that it must always be determined by a magistrate unless exigent circumstances excuse a search warrant. . . . Reasonable belief embodies the same standards of reasonableness [as probable cause] but allows the officer who has already been to the magistrate to secure an arrest warrant, to determine that the suspect is probably within certain premises without an additional trip to the magistrate and without exigent circumstances.

(Footnote and citations omitted). The reasonableness of the search itself must be determined on a case-by-case basis. In many circumstances a brief and courteous walk-through is sufficient to determine if a suspect is in fact in the home.

The recent Supreme Court decision in *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), does not require a contrary conclusion. As the majority notes, *Payton* did not address the issue presented here.

Accordingly, I would find that the police need not obtain a search warrant for third-party dwellings when they have a reasonable belief that the person named in a valid arrest warrant is in the dwelling.