Prentis Dwayne GROSS, Plaintiff,

v.

TAZEWELL COUNTY JAIL, et al., Defendants.

Thomas Kim ODOM, Plaintiff,

v.

SHERIFF, TAZEWELL COUNTY JAIL, et al., Defendants.

Alfred Calvin LAWSON, Plaintiff,

v.

George HORN, et al., Defendants.

David A. WHEELER, Plaintiff,

v.

TAZEWELL COUNTY JAIL, et al., Defendants.

Alvin Eugene ROLAND, Plaintiff,

v.

TAZEWELL COUNTY JAIL, et al., Defendants.

Ressell Dean CLIFTON, Plaintiff,

v.

TAZEWELL COUNTY JAIL, et al., Defendants.

Scotty Randall LOWE, Plaintiff,

v.

William E. OSBORNE, et al., Defendants.

Civ. A. Nos. 81–0123–A, 81–0140–A, 81–0142–A, 81–0125–A, 81–0168–A, 81–0261–A and 81–0280A.

United States District Court, W. D. Virginia, Abingdon Division.

March 2, 1982.

Prentice Dwayne Gross, Thomas Kim Odom, Alfred Calvin Lawson, David A. Wheeler, Alvin Eugene Roland, Ressell Dean Clifton and Scotty Randall Lowe, pro se.

Roger W. Mullins, Tazewell, Va., Richard F. Gorman, III, Asst. Atty. Gen., Crim. Div., Corrections, Richmond, Va., for defendants.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, District Judge.

Plaintiffs brought these actions under 42 U.S.C. § 1983, challenging the conditions of their confinement at the Tazewell County Jail. Jurisdiction of this court is established pursuant to 28 U.S.C. § 1343. Inasmuch as all the plaintiffs stated similar factual allegations, these cases were consolidated for consideration and disposition. The cases were referred to United States Magistrate Glen E. Conrad for the conduct of an evidentiary hearing and submission of a report and recommended disposition. The magistrate's report was filed on November 18, 1981, and the cases are now before the court for further consideration. The court will first consider a number of unrelated claims advanced by the plaintiffs. The court will then proceed to evaluation of a common claim stated in all the complaints, that of overcrowding in the Tazewell County Jail.

## GENERAL CLAIMS

 Each of the plaintiffs identified certain claims relating to particular aspects of his confinement. The magistrate recommended that summary judgment be entered in favor of the defendants as to each of these claims. After consideration of the magistrate's report and after evaluation of the original pleadings, supplemental filings, and the evidence adduced before the magistrate, the court finds the magistrate's recommendations as to these claims to be appropriate and just. Specifically, the court agrees that there is no evidence of any general pattern of deliberate indifference to serious medical needs. Furthermore, the court agrees that none of the plaintiffs have experienced deliberate indifference to any specific medical needs. The court also agrees that the claims of uncleanliness, infestation with rats and roaches, and lack of proper sanitary measures are without constitutional merit. The court agrees that the evidence fails to sustain the claims of improper restriction on telephone calls, personal visitation, and visitation by attorneys. The court finds that there is no evidence of improper threats of solitary confinement or a dog being locked in the jail with one of the plaintiffs. The court concludes that the complaint of one of the plaintiffs relating to lack of access to the television is not of constitutional magnitude. The court agrees that the complaints regarding the nutritional merit of the food served to the plaintiffs, the handling of that food, the cleanliness of the food, and all other matters relating to the quality of the food service are without factual or legal merit. The court finds that while there may be some factual basis to plaintiff Clifton's allegation of excessive radio noise and insufficient provision of razor blades, there is no evidence that any of the defendants have acted in an unreasonable, negligent, or improper manner regarding these situations. The court notes that neither side submitted any objections to the magistrate's factual findings relative to the claims delineated above. In light of these circumstances, summary judgment will be entered in favor of the defendants as to each of the claims enumerated above. Fur-

thermore, the court finds sufficient cause to support the magistrate's recommendation that the complaints filed by Alvin Eugene Roland and Alfred Calvin Lawson be dismissed for failure to prosecute. An appropriate order of dismissal will be entered as to these plaintiffs.

## OVERPOPULATION CLAIMS

 It is essentially undisputed that the Tazewell County Jail has suffered from gross inmate overpopulation for a considerable period of time. The magistrate's findings as regards this overpopulation are comprehensive and exhaustive. The court concludes that those findings are accurate and hereby adopts them in their totality.

Stated briefly, the court notes that the Tazewell County Jail was built in 1952–53 and an addition was made in 1971–72. The jail's maximum design capacity is 43. However, as noted by the magistrate, this figure is somewhat deceptive in actual practice inasmuch as two of the jail's eight cell blocks were formerly reserved exclusively for women and juveniles. For this reason, when the magistrate visited the jail, the space available for incarceration of adult males was designed to accommodate no more than 33 persons. At the time of the magistrate's visit, approximately 50 adult males were incarcerated in the jail. The primary defendant in these cases, Tazewell County Sheriff William Osborne, testified that he had at times as many as 90 prisoners in the jail, most of whom were adult males. Just prior to the hearing in this case, Osborne stated that the population had averaged 80. In these periods of overpopulation, the Sheriff has housed adult male inmates in the dayroom, the area designed for inmate recreation and movement. Given the necessity to place mattresses on the floor of the dayroom for these inmates, the potential for exercise during the day is effectively eliminated. No other recreational areas are available. Indeed, in times of peak population, it would appear that inmates are scarcely able to even walk around the dayroom without stepping on another inmate's bed or body.

The court concurs in the magistrate's conclusion that the overpopulation is of such proportion and effect as to impose conditions of confinement which are inhumane, shocking to the conscience, and constitutionally unacceptable.

Subsequent to the filing of the magistrate's report, defendant Osborne submitted an affidavit in which he states that juveniles and females are now incarcerated in another, unnamed facility. This relocation has obviously increased the available space for adult male inmates, and has relieved some of the burden of overpopulation described in the magistrate's report. However, given the extent of overpopulation found by the magistrate and uncontested by any of the defendants, it is obvious that some form of more extensive relief is appropriate.[1] The real dilemmas in this case relate to the formulation of adequate relief, and the identification of the responsible parties. The court now directs its attention to these difficult issues.

The magistrate found that, at all relevant times, the primary defendant, Sheriff Osborne, acted in good faith in his attempt to deal with the obvious overpopulation problem. This finding is undoubtedly correct. Sheriff Osborne has brought the matter to the attention of local and state governmental officials and has attempted to organize support for a regional jail facility, all to no avail. Furthermore, it is readily apparent that the precipitating problem of influx and departure of inmates are matters totally beyond the personal control of the Sheriff. The size and capacity of the local jail are matters within the control of the County Board of Supervisors. Pretrial detention and post-trial sentencing are within the province of local judicial officers. As to inmates sentenced to periods of incarceration in the state correctional system, the Sheriff is at the mercy of the Department of Corrections in the removal of such persons to appropriate state facilities. State law requires that if a sheriff or any law enforcement officer should "wilfully refuse to receive into his custody a person lawfully committed thereto, he shall be guilty of a Class 2 Misdemeanor." Va.Code (1950) § 18.2–476.

Prior to the filing of the magistrate's report, the Sheriff moved the court to join certain parties as defendants who were deemed necessary to proper resolution of the issues in this case. *See* Rule 19 of Federal Rules of Civil Procedure. The Sheriff sought joinder of the County of Tazewell, the Commonwealth of Virginia, and the Director of the Virginia Department of Corrections. By order entered November 16, 1981, these parties were so joined,[2] primarily to seek their help and suggestions as to possible means to remedy the unconstitutional deprivations.

In comparison to the Sheriff's relatively powerless position, it would seem that both the Board of Supervisors and the Director of the Virginia Department of Corrections have means at their disposal to ease the overpopulation burden. Obviously, the Board of Supervisors has the authority to appropriate funds for enlargement or modification of the existing jail, or for incarceration of inmates at other facilities. Likewise, the State Department of Corrections has the potential to substantially alleviate the problem. Section 53–135.1 of the Code of Virginia (1950) provides that "[T]he director shall have the power to transfer any jail inmate, ... whose sentence is final from a jail to any State or city farm, State training school or correctional field unit; provided that any jail inmate whose sentences ... total more than twelve months, shall in all instances be transferred ...." Thus, it would seem that the State Department of Corrections has not only the power but the duty to alleviate the situation

---

1. There were a total of only five women and juveniles incarcerated at the time of the magistrate's visit to the jail.

2. By order subsequently entered December 11, 1981, the Tazewell County Board of Supervisors was substituted for the County of Taze-

well. It should be noted that the Order of Joinder had not been entered at the time the magistrate's report and recommendations were drafted. Consequently, the magistrate made no findings relative to these additional parties.

present in this case. Finally, the court notes that, while not a party to this suit, the Circuit Court of Tazewell County also has the power to remedy an overpopulation problem. *See* Code of Virginia (1950) §§ 53–129, 53–130, 53–139, 53–140, and 53–142.1. The court notes that the Sheriff is not totally without recourse. The Sheriff might file suit in state court to mandamus the Board of Supervisors to provide adequate facilities. Also, the Sheriff could attempt to mandamus the Director of the State Department of Corrections in state court so as to require him to transfer all prisoners in his custody having more than twelve months to serve. Finally, the Sheriff could request the judge of the Circuit Court of Tazewell County to proceed by mandamus under § 53.129.

 Despite the remedial opportunities and mandates established under state law, all the defendants now seek dismissal on various grounds. Sheriff Osborne's most recent affidavit establishes that on December 14, 1981, there were 17 inmates in his custody who were awaiting transfer to state facilities. If these prisoners were moved today the overcrowding problem at the jail would be essentially resolved. Without addressing the problem on its merits, the Commonwealth of Virginia has tucked its head in the sand and asserted the Eleventh Amendment defense of sovereign immunity. The court finds that the Commonwealth is immune from suit within the context of this case. *Alabama v. Pugh*, 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978). Similarly, the Board of Supervisors of Tazewell County must also be found immune. However, no such defense exists as to the Director of the Department of Corrections and William Osborne, Sheriff of Tazewell County.

Citing statistics contained in an affidavit filed by T. D. Hutto, former Director of the Virginia Department of Corrections, the Director now asserts that he is unable to comply with his statutory mandate because the correctional system has no available space. The Director notes that if he is required to remove convicted felons from Tazewell to other jails, it would adversely affect other sheriffs who are not parties to this suit. However, the court notes that no statistics have been advanced which would indicate that overcrowding problems in other jails even closely approximate those found to exist in the Tazewell facility. Moreover, the Director's own statistics indicate that there is a much smaller proportionate disparity between the number of state inmates and the number of available beds in the state system than that which routinely prevails in the Tazewell County Jail.[3] Finally, there is no evidence which indicates that the strain on non-bed space in the state system is comparable to that in the Tazewell facility. The most serious manifestation of the overcrowding in the Tazewell County Jail is the resulting lack of recreational space in the cell dayrooms. The restriction in physical activity and the limitation of inmate movement at the Tazewell County Jail are of shocking proportions, and are without parallel in any state institution known to this court.

 This latter circumstance merits further elaboration. The court is not unmindful of the facts that the state prison system is overcrowded and that the State Department of Corrections faces a dilemma of its own. However, the court is not sympathet-

---

3. In an affidavit filed by former Department Director Hutto on January 4, 1982, it is stated that as of October 5, 1981, the Department of Corrections had 8,754 inmates in its custody. This figure did not count prisoners in local jails such as Tazewell County. The affidavit further states that there are only 8,280 general population beds and 655 special purpose beds. Special purpose beds are such as hospital, mental health, infirmary, segregation status, and disciplinary status. The Director stated that some beds must always be reserved for special handling of inmates. According to the affidavit, there is usually a shortage of about 300 general purpose beds under the best of conditions. Hutto noted that the situation is aggravated by water problems at the Mecklenberg facility and sewage problems in 18 other institutions. According to Hutto, the penitentiary in Richmond is restricted by federal court order to 900 inmates. Finally, Hutto reported that the capacity of all jails in Virginia is 5,423 whereas on September 29, 1981, the jail population was 6,227.

ic to arguments founded upon statistics which do not consider certain fundamental realities. It is simply not appropriate to lump all inmates into an abstract category and assert that overcrowding exists everywhere. The fact is that the convicted inmates in the Tazewell County Jail are currently serving substantial portions of their sentences in a facility designed as a very short-term lockup. They have no access to workshops, road work, pool tables, or walks in the prison yard such as are available in most state penal institutions. Instead, they spend their days in a room of about 162 square feet, most of which is routinely taken up with mattresses of other inmates. Due to close and constant proximity with other inmates, emotional unrest is manifest. A comparison of inmates versus available beds is not the true index of unconstitutional overcrowding. The manifestations of such overcrowding in daily life must be considered. *Hite v. Leeke*, 564 F.2d 670 (4th Cir. 1976). It is abundantly clear that extreme overcrowding in a local jail is of greater practical effect and constitutional consequence than in a larger institution or a common road camp. Simply stated, all overcrowding is not equal. Perhaps more importantly, the local jail houses a high percentage of pretrial detainees. The pretrial detainees at the Tazewell Jail are improperly penalized and punished before their trials are ever conducted. Such punishment constitutes a deprivation of due process. *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). As a matter of common sense and fundamental fairness, the criminal justice system must ensure that pretrial detainees are not housed in more deprived circumstances than those accorded to convicted persons. Without doubt, the oppressive conditions of the instant case do not withstand the stricter degree of scrutiny which must necessarily be applied in situations involving pretrial detainees. Overcrowding in a local jail cannot be quantitatively equated with overcrowding in a state penal institution.

The Director of the Department of Corrections, not the Sheriff, has the power and duty to transfer all prisoners serving periods of incarceration of over twelve months. The Director refers to this authority as discretionary. However, the statute reads shall and not may. Thus, it is the Director of the Department of Corrections who is violating the state law and infringing upon fundamental constitutional rights in this case, if for no other reason than by his failure to file suit or seek other appropriate remedies.

Sheriff Osborne's objections to the magistrate's report set forth no dispute with the findings of fact. Instead, he argues that since the magistrate found that he acted in good faith and is doing all he can do, he should be found to be immune from both injunctive relief and monetary damages. The magistrate did conclude that the Sheriff's good faith rendered him immune from monetary damages. However, it is well established that the fact that an official is immune from liability in damages does not preclude injunctive or declaratory relief. *Wallace v. King*, 626 F.2d 1157 (4th Cir. 1980); *Timmerman v. Brown*, 528 F.2d 811 (4th Cir. 1975). The Sheriff does not argue that he would be exposed to undue expense of compliance should injunctive relief be granted. *See Gates v. Collier*, 501 F.2d 1291 (5th Cir. 1974).

## SUMMARY AND DISPOSITION

In conclusion, it seems that each defendant in this case, while not seriously disputing the fact of constitutional violations, would have the court do nothing about the situation because the problem is purportedly fragmented and beyond the control of any single person. Each defendant asserts that he has acted in good faith and that he has done the best that he can do. However, where injunctive relief is necessary to arrest violations of constitutional rights, good faith is no defense. The fact that state law prohibits or fails to authorize a party to alleviate a wrong does not excuse a continuing violation of fundamental guarantees. Any state law that permits a person to violate the constitutional rights of another is void, and the fact

that a state statute fails to grant power to a state official to alleviate constitutional wrongs cannot excuse the actions or omissions of that official in perpetrating the wrong. The court concludes that provision for injunctive relief is both appropriate and justified.

■ Accordingly, an order will be entered directing the Sheriff of Tazewell County to house no more than 43 prisoners in the Tazewell County Jail at any one time, unless the jail is enlarged or modified so as to reasonably accommodate a greater number of inmates.[4] The order will further provide that, if the Sheriff is unable to meet this figure, he will immediately notify the Director of the Department of Corrections to remove all or as many of any state inmates present in the jail necessary to reduce the population to 43. If such prisoners have not been removed at the expiration of a fifteen-day period, the Sheriff will be directed to immediately notify the court, whereupon the court will order release of such inmates as is necessary to maintain the jail population at 43 persons. The sequence of release will be determined by the court. If, at any time, the jail population should exceed 43 persons after removal of all state prisoners, the Sheriff will be directed to promptly notify the Board of Supervisors of the necessity to make other arrangements within fifteen days. If the Board of Supervisors does not act before the expiration of that fifteen-day period, the Sheriff will be directed to promptly notify the court, whereupon sufficient inmates will be ordered released so as to reduce the population to 43. The sequence of release will be determined by the court. Sheriff Osborne will be directed to file a report monthly with this court as to the number of prisoners in the jail each day during the preceding month, and to provide an explanation if the number on any day exceeds 43. Such filings shall continue until further order of the court. Finally, the court's order will provide that anyone interfering with the

Sheriff in implementing the provisions of the order shall be deemed guilty of criminal and civil contempt. At this time, the court finds that, given the undeveloped state of the pleadings, it is neither appropriate nor necessary to enter specific orders relative to the Director of the Department of Corrections. The court does not exclude the possibility of entry of such orders at a later time. Even as it is, however, it should be apparent that the ultimate conclusion in this matter will turn in some measure on the willingness of the Director and/or Board of Supervisors to respond in an appropriate and responsible manner.

The clerk is directed to send certified copies of this Opinion to all counsel of record.

---

**4.** The magistrate's report suggests that such modifications are currently being considered by county authorities.