Forrest BURNHAM, et al., Plaintiffs,

v.

Roy A. WEST, et al., Defendants.

Civ. A. No. 87–0464–R.

United States District Court,
E.D. Virginia,
Richmond Division.

Dec. 28, 1987.

David P. Baugh, Claire G. Cardwell, Gerald T. Zerkin, Michael P. Kozak, Zerkin, Heard & Kozak, and Kay Ely–Pierce, Richmond, Va., for plaintiffs.

Frank B. Miller, III, Elizabeth Parrish, Sands, Anderson, Marks & Miller, Richmond, for defendant Harrison–Jones.

James W. Morris, III, Ann Adams Webster, David P. Corrigan, Browder, Russell, Morris & Butcher, Richmond, Va., for Roy A. West, Joyce P. Hewlett, Andrew Miller, Ozzie W. Brown, and Margaret L. Jones.

## MEMORANDUM OPINION AND ORDER

SPENCER, District Judge.

Plaintiffs, students at Albert Hill Middle School ("AHS") suing by their next friends, have moved for summary judgment in their favor on the two remaining claims in this suit, both of which concern allegedly unconstitutional searches carried out by certain teachers at the direction of Dr. Roy A. West, principal at AHS during the time period pertinent to this case.[1] West and the named teachers (the "AHS defend-

---

1. Plaintiffs are proceeding under 42 U.S.C. section 1983 based on alleged violations of the Fourth and Fourteenth Amendments, and under Va.Code Ann. section 19.2–59 (1983). The latter provision executes Va. Const. art. I, section 10, which prohibits unreasonable searches and seizures. *McClannan v. Chaplain,* 136 Va. 1, 116 S.E. 495 (1923). Since section 19.2–59 provides the same protection as the Fourth Amendment, *Carter v. Commonwealth,* 209 Va. 317, 163 S.E. 2d 589 (1968), *cert. denied,* 394 U.S. 991, 89 S.Ct. 1479, 22 L.Ed.2d 766 (1969), the federal and state causes of action will be treated as one.

ants") have moved for summary judgment in their favor as to liability for one of the searches, and as to damages and declaratory and injunctive relief. Dr. Lois Harrison–Jones, the remaining defendant and West's supervisor, has moved for summary judgment on the ground that the evidence fails to show sufficient personal involvement on her part to support a claim against her.

The facts will be stated in connection with the motion to which they pertain.

## I. MOTION OF DR. LOIS HARRISON–JONES

In January 1987, Harrison–Jones was made aware by at least three parents that students at AHS had been searched for "Walkmen" and radios.[2] Harrison–Jones promptly contacted West, asked him to explain his action in ordering the search, and discussed with him both the search and the question of returning the items that had been confiscated.

All or a substantial portion of the AHS student body was subsequently searched for marijuana. When Harrison–Jones learned of the later search, she met with West to discuss his policies concerning searches. Harrison–Jones subsequently sent West a letter advising him to obtain enough information to be able to confine his searches to a narrower population in the future.

At some point in the period encompassing the above events, Harrison–Jones discussed the searches with attorneys connected with the school system.

■ Supervisory indifference or tacit authorization of subordinates' misconduct, if demonstrably a causative factor in a constitutional injury,[3] is actionable under 42 U.S.C. section 1983. *E.g., Slakan v. Porter,* 737 F.2d 368 (4th Cir.1984), *cert. denied,* 470 U.S. 1035, 105 S.Ct. 1413, 84 L.Ed.2d 796 (1985). "The plaintiff ... assumes a heavy burden of proof in supervisory liability cases." *Id.* at 373. One of the necessary elements of proof in such cases is the supervisor's failure to take reasonable remedial steps to prevent the injury. *Orpiano v. Johnson,* 632 F.2d 1096, 1101 (4th Cir.1980), *cert. denied,* 450 U.S. 929, 101 S.Ct. 1387, 67 L.Ed.2d 361 (1981). The additional necessity of showing a causal link between the supervisor's inaction and the injury is what makes plaintiff's burden "heavy"; it is not enough merely to disagree with the supervisor's managerial techniques. *See Slakan,* 737 F.2d at 372–73; *see also Rizzo v. Goode,* 423 U.S. 362, 371, 96 S.Ct. 598, 604, 46 L.Ed.2d 561 (1976) ("affirmative link"); *Thompkins v. Belt,* 828 F.2d 298, 304 (5th Cir.1987) (action *or inaction* must be shown to have caused the injury).

■ Valuable guidance on the necessary causal link may be found in *Spell v. McDaniel,* 824 F.2d 1380 (4th Cir.1987). *Spell* is a municipal liability rather than a supervisory liability case, but in recognizing foreseeability as the touchstone of causation *Spell* simply aligns itself with one of the ancient principles of tort law.

> A sufficiently close causal link between ... a known but uncorrected custom or usage and a specific violation is established if occurrence of the specific violation was made reasonably probable by permitted continuation of the custom.... [F]ailure to correct the known practices must be such as to make the specific violation "almost bound to happen, sooner or later," rather than merely "likely to happen in the long run."

824 F.2d at 1391. Applied in the case at bar, this standard has the virtue of focusing analysis on Harrison–Jones's connection with the alleged injury as revealed in the record, thus avoiding speculation about the possible effect of actions that she

---

2. Except for undisputed facts, the facts in connection with each motion under consideration will be viewed in the light most favorable to the nonmoving party, in accordance with the standard for summary judgment determinations. *E.g., Ross v. Communications Satellite Corp.,* 759 F.2d 355, 364 (4th Cir.1985).

3. For purposes of Harrison–Jones's motion, the searches at issue are assumed to have been unlawful.

might have taken. Plaintiffs contend that "[t]he basis of plaintiffs' claim against defendant Harrison–Jones is not that she failed to respond at all, but that she failed to act significantly or effectively to prevent future harm...." (Plaintiffs' Reply Br. 7). In essence, this amounts to saying that because an injury happened, Harrison–Jones must have acted inappropriately, which obviously begs the question of how any such act or omission caused the injury. Plaintiffs have utterly failed to show how Harrison–Jones's actual approach to the situation made further violations reasonably probable.

Plaintiffs have also failed to point to evidence of any indifference or tacit approval on Harrison–Jones's part. In support of her summary judgment motion, Harrison–Jones has shown that she promptly investigated the searches in question, inquired into West's policies concerning student searches, discussed the searches with legal counsel, and recommended to West that he narrow the scope of future searches by conducting more extensive investigations beforehand. The latter recommendation was made by letter, and while the parties have failed to produce this letter, both West and Harrison–Jones have described its contents in their sworn depositions as provided in Fed.R.Civ.P. 56.[4] "[W]hen a motion for summary judgment is made and supported as required in Rule 56, the nonmoving party must produce 'specific facts showing that there is a genuine issue for trial,' rather than resting upon the bald assertions of his pleadings." *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir.1985) (quoting Fed.R. Civ.P. 56(e)). Because Harrison–Jones has established the absence of a material factual dispute as to inaction on her part,[5] and

as to causation, she is entitled to summary judgment.

## II. MOTION OF PLAINTIFFS

*Facts*

In December 1986, during a regular class period at AHS, West announced that he had discovered defacement of school property, and directed the teachers to search students' bookbags, pockets, and pocketbooks for magic markers. Under an AHS rule, students were not permitted to have magic markers on school property unless the magic markers were required in a particular class.

Teachers proceeded to look into bookbags and pocketbooks, and required boys to turn their pockets inside out. There is no evidence that any student was physically touched during the search.

On or about January 6, 1987, a teacher told West that she had observed several students alighting from school buses that morning carrying "Walkmen" or radios. Without making any further inquiry, West ordered a search of all students' bookbags and pocketbooks for Walkmen or similar devices.

A search was conducted pursuant to West's instructions. One teacher told his students to stand by their desks and place the items in their bookbags and purses on top of their desks. He then looked into the emptied purses. Another teacher placed her hand into a plaintiff's purse, but did not find the Walkman that was inside.

On or about February 2, 1987, a teacher reported to West that she had smelled marijuana smoke in two hallway areas near the school cafeteria. Classes were in progress at this time, and no students were in the halls. West went immediately to the hallway areas and detected a strong odor of

---

**4.** Counsel pointed out at oral argument that Harrison–Jones's and West's accounts of what passed between them concerning the searches are not perfectly congruent. This is to be expected where each of two deponents is speaking from independent recollection. The accounts do not differ on the operative facts, and the Court finds no other difference amounting to a material factual dispute.

**5.** At oral argument, plaintiffs stressed Harrison–Jones's view that West was entitled to discretion in operating AHS. (See Harrison–Jones Dep. 18, 44). Plaintiffs have confused delegation with abdication; it is entirely reasonable for Harrison–Jones to rely on a school principal to address matters within his day-to-day authority. *See, e.g., Atcherson v. Siebenmann,* 605 F.2d 1058, 1066 (8th Cir.1979).

marijuana in both. West's description of the physical layout of the pertinent areas is significant.

Q Could you detect the odor in both places?

A Both places. In between there is a large area which is the cafeteria. You would leave one area and go through the cafeteria and to the other area.

Q There was a door from the outside into the cafeteria directly?

A The door comes from the outside into this little vestibule or hallway, and that's where I smelled the second portion of the marijuana.

(West Dep. 59). West looked for physical evidence but found none. West then made a "random check" by walking down the hall and asking several teachers whether they had excused any students from class during the period he had determined the marijuana use had occurred; although AHS uses a hall pass system, this effort produced no suspects. There is no evidence that passes were checked or that any further pre-search investigation was made.

West ordered a search of all students' pocketbooks and bookbags, and of male students' pockets. During this search, one of the plaintiffs was required to empty her purse onto a teacher's desk, exposing some tampons to the view of the teacher and nearby students. Another teacher sniffed one student's hands to determine if they smelled like marijuana. Students were required to turn their pockets inside out and place the contents on top of their desks.

*Discussion*

■ Two matters must be addressed before turning to the merits of plaintiffs' Fourth Amendment claims. First, the AHS defendants made the claim at oral argument that no Fourth Amendment "searches" occurred in this case. However, "an examination of the contents of a person's pocket is clearly a search, whether the pocket is emptied by the officer or by the person under the compulsion of the circumstances." *United States v. DiGiacomo*, 579 F.2d 1211, 1215 (10th Cir.1978). School children have a reasonable expectation of privacy in personal articles carried with them inside purses or wallets. *New Jersey v. T.L.O.*, 469 U.S. 325, 339, 105 S.Ct. 733, 741, 83 L.Ed.2d 720 (1985). There is no rational basis to exclude bookbags from this zone of protection; certainly the *T.L.O.* Court suggested no distinction in this regard. *Id.* at 337, 105 S.Ct. at 740 ("closed purse *or other bag*"; emphasis added). Such articles have uniformly been held to be protected by the Fourth Amendment. *See, e.g., United States v. Epperson*, 454 F.2d 769, 770 (4th Cir.), *cert. denied*, 406 U.S. 947, 92 S.Ct. 2050, 32 L.Ed.2d 334 (1972) (briefcase). The occasions on which plaintiffs were required to empty their purses, bookbags, and pockets, exposing the contents to view, were "searches" within the meaning of the Fourth Amendment.

■ The sniffing of plaintiff Tarsha Page's hands, however, was not a "search." School children do not have a reasonable expectation of privacy in the air surrounding their persons, and school officials may sample this air for the purpose of maintaining a proper learning environment to the same extent that they would be justified in conducting a purely visual inspection. *Doe v. Renfrow*, 475 F.Supp. 1012, 1021–22 (N.D.Ind.1979), *aff'd*, 631 F.2d 91 (7th Cir.1980), *cert. denied*, 451 U.S. 1022, 101 S.Ct. 3015, 69 L.Ed.2d 395 (1981); *see generally Jones v. Latexo Independent School District*, 499 F.Supp. 223, 232–33 (E.D.Tex.1980) (suggesting that sniff by school officials instead of canines would not have been a search). Defendants will be granted summary judgment with regard to the hand-sniff incident.

■ Second, the AHS defendants point out in their summary judgment motion that Forrest Burnham, the only plaintiff allegedly subjected to a magic marker search, testified at his deposition that he was not searched for magic markers. In response, plaintiffs have submitted Burnham's affidavit to the effect that he misunderstood the questions at his deposition and that he was searched for magic markers. The conflict between Burnham's deposition testimony and his affidavit poses a credibility question going to the material issue of

standing. Credibility questions must be resolved by the trier of fact, not by the Court on summary judgment. *See, e.g., Kennett–Murray Corp. v. Bone*, 622 F.2d 887 (5th Cir.1980) (conflict between deposition and affidavit on material issue). Plaintiffs' summary judgment motion will therefore be denied as to the magic marker search.

■ "[T]he underlying command of the Fourth Amendment is always that searches and seizures be reasonable...." *T.L.O.*, 469 U.S. at 337, 105 S.Ct. at 740. The searches in the case at bar were all conducted in an atmosphere devoid of individualized suspicion. The United States Supreme Court has not decided whether individualized suspicion is a necessary component of the reasonableness standard applicable to school searches,[6] but it has strongly suggested that this question should be answered by recourse to the same reasonableness balancing analysis applied in other search cases.

> Exceptions to the requirement of individualized suspicion are generally appropriate only where the privacy interests implicated by a search are minimal and where "other safeguards" are available "to assure that the individual's reasonable expectation of privacy is not 'subject to the discretion of the official in the field.'"

*Id.* at 342 n. 8, 105 S.Ct. at 743 n. 8 (quoting *Delaware v. Prouse*, 440 U.S. 648, 654–55, 99 S.Ct. 1391, 1396–97, 59 L.Ed.2d 660 (1979)). The Fourth Amendment interest-balancing process may, in some cases, entirely preclude insistence on individualized suspicion. *Prouse*, 440 U.S. at 654–55, 99 S.Ct. at 1396–97. However, reduction of the individualized suspicion requirement in such cases is only possible because other variables in the reasonableness equation have been correspondingly magnified. *See, e.g., Marshall v. Barlow's, Inc.*, 436 U.S. 307, 321, 98 S.Ct. 1816, 1825, 56 L.Ed.2d 305 (1978); *United States v. United States District Court*, 407 U.S. 297, 322 and n. 20, 92 S.Ct. 2125, 2139 and n. 20, 32 L.Ed.2d 752 (1972); *Camara v. Municipal Court*,

387 U.S. 523, 537, 87 S.Ct. 1727, 1735, 18 L.Ed.2d 930 (1967).

In school cases, the child's interest in privacy balances against the interest in maintaining discipline in the classroom and on school grounds. *T.L.O.*, 469 U.S. at 339, 105 S.Ct. at 741. A search of a "closed purse or other bag" carried on a child's person, "no less than a similar search carried out on an adult, is undoubtedly a severe violation of subjective expectations of privacy." *Id.* at 337–38, 105 S.Ct. at 740–41. These expectations of privacy on the part of a school child are legitimate. *Id.* at 338–39, 105 S.Ct. at 741. Equally legitimate is the school's "need to maintain an environment in which learning can take place." *Id.* at 340, 105 S.Ct. at 742. But school officials may not unreasonably satisfy the latter need at the expense of the child's privacy interest, because the Fourth Amendment's "prohibition on unreasonable searches and seizures applies to searches conducted by public school officials." *Id.* at 333, 105 S.Ct. at 738. To determine the reasonableness of the searches in this case, the Court must consider first " 'whether the ... action was justified at its inception....' " *Id.* at 341, 105 S.Ct. at 743 (quoting *Terry v. Ohio*, 392 U.S. 1, 20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968)).

> Under ordinary circumstances, a search of a student by a teacher or other school official will be "justified at its inception" when there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school.

*T.L.O.* at 341–42, 105 S.Ct. at 743 (footnotes omitted).

The Walkman search was unjustified at its inception because there were no reasonable grounds to suspect that the search of any given student would turn up evidence of that student's violation of any law or school rule. At best, it would have been reasonable to suspect that some unknown members of the student body had Walkmen or radios in their possession. The marijua-

---

**6.** The Court recently sidestepped this issue again in *O'Connor v. Ortega*, —— U.S. ——, 107 S.Ct. 1492, 1503, 94 L.Ed.2d 714 (1987) (searches of employees by public employer).

na search illustrates even more clearly the unjustifiable nature of the sweep searches in this case, because suspicion in this instance could not reasonably be narrowed even to the entire student body. The scent of marijuana was reported to West while the students were in class, and when he investigated the hallways for himself the scent was still strong. His cursory efforts to determine whether any student had left a classroom during the relevant time period led to no evidence that a student had been in the area. In one of the hallways was a door to the outside. The places where the scent was detected were open hallways rather than confined areas to which only certain individuals had access, and the fact that these hallways led to the cafeteria indicates that nonstudents would reasonably be expected to use them during the time in question.

While the Court readily accepts the proposition that drug abuse is a serious problem, defendants have offered no evidence concerning its prevalence at AHS. Smuggling Walkmen or radios into school is obviously a less serious problem than drug abuse, and there is likewise no evidence of its prevalence at AHS. Defendants have made no sufficient showing of exigency requiring an immediate search without particularized suspicion, while plaintiffs, on the other hand, have shown a striking paucity of investigatory measures reasonably calculated to narrow the field of suspects.[7] Because the searches were unjustified *ab initio* for lack of individualized suspicion, the Court need not inquire into the actual search techniques used to assess the permissibility of their scope.

General searches have uniformly been condemned in the absence of other factors supporting reasonableness. *Davis v. Mississippi*, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969) (Supreme Court rejected general roundup of blacks in response to victim's description of assailant as black). Under the strong majority view, the Fourth Amendment requires individualized suspicion in the mass drug testing context generally. *Feliciano v. City of Cleveland*, 661 F.Supp. 578, 587–92 (N.D.Ohio 1987) (analyzing cases and holding general drug testing of police academy cadets unreasonable). Individualized suspicion is even required in the prison setting, at least with regard to strip searches of visitors. *Hunter v. Auger*, 672 F.2d 668, 675 (8th Cir.1982) (reasonable suspicion must be aimed at the particular strip search candidate). Finally, and most importantly, the balance this Court strikes in favor of individualized suspicion accords with the decisions that have addressed the issue in the school setting. *E.g., Horton v. Goose Creek Independent School District*, 690 F.2d 470, 481–82 (5th Cir.1982), *cert. denied*, 463 U.S. 1207, 103 S.Ct. 3536, 77 L.Ed.2d 1387 (1983); *Jones v. Latexo Independent School District*, 499 F.Supp. at 234; *Bellnier v. Lund*, 438 F.Supp. 47, 54 (N.D.N.Y.1977); *Kuehn v. Renton School District No. 403*, 103 Wash. 2d 594, 694 P.2d 1078, 1081 (1985).

Using *T.L.O.*'s footnote 8 as a point of departure, the AHS defendants urge this Court to adopt the rule that a school administrator's search is valid so long as he or she had reasonable cause to believe that a law or a school rule had been violated. But this rule hardly furnishes an objective alternative to individualized suspicion that might safeguard the students' privacy interest. Reasonable cause to believe—or even certainty—that a violation of rule or law has occurred is no safeguard; instead, when standing alone as in this case, it serves merely as an invitation to an impermissibly broad search. "[T]he reasonableness standard usually requires, at a minimum, that the facts upon which an intrusion is based be capable of measurement against 'an objective standard,' whether this be probable cause or a less stringent test." *Prouse*, 440 U.S. at 654, 99 S.Ct. at 1400 (footnotes omitted); *accord Terry*, 392 U.S. at 21 and n. 18, 88 S.Ct. at 1879–80

---

7. Some effort to focus suspicion on certain individuals could well have been fruitful. For example, it would have been useful to question the teacher who reported the Walkmen to elicit a description of one or more of the perpetrators, or at least to find out what bus they had been riding. No effort was made to exclude even nonstudents, such as cafeteria workers, from suspicion before carrying out the marijuana search.

and n. 18; *Bellnier*, 438 F.Supp. at 53. To permit searches on a mere generalized suspicion would vitiate the principles established in *T.L.O.*, because the bare suspicion that a crime or infraction has occurred offers no protection to the legitimate expectation of privacy held by each member of the student body, an expectation that *T.L.O.* teaches must at least be weighed in the balance.[8]

The general searches conducted at AHS are powerfully reminiscent of the general searches that the Fourth Amendment was enacted to prohibit. *See generally Frank v. Maryland*, 359 U.S. 360, 362–65, 79 S.Ct. 804, 807–08, 3 L.Ed.2d 877 (1959) (describing pre-Revolutionary inception of Fourth Amendment protection as a response to writs of assistance). The author of this opinion is not the first judge to be disturbed by this fact upon being confronted with a general search in the school setting. See *Doe v. Renfrow*, 451 U.S. 1022, 1026–28, 101 S.Ct. 3015, 3018–19, 69 L.Ed.2d 395 (1981) (Brennan, J., dissenting from denial of certiorari); *Jones v. Latexo Independent School District*, 499 F.Supp. at 234. This Court will not, on the basis of a footnote, depart from a principle relied on for centuries; instead, it will follow that principle as soundly applied in the cases that have squarely considered general searches in the schools.

There was some discussion at oral argument about whether this case "trivializes the Constitution" in any respect, and these words, undoubtedly uttered sincerely and in good faith, still seem to linger over this case. It is true that some of plaintiffs'

claims have failed to survive rigorous legal scrutiny. But let no one imagine that the interests still at stake either trivialize the Constitution or are made to seem trivial thereby. Given the special setting of the public schools, it is not enough to say merely that the Fourth Amendment protects the rights of public school children. We have the obligation to give life to the Constitution in our children's experience at every opportunity. "Example is the school of mankind, and they will learn at no other." Burke, *Letters on a Regicide Peace*, no. 1 (1796). It was not for antiquarian interest that the *T.L.O.* Court opened its Fourth Amendment analysis with the following.

> The Fourteenth Amendment, as now applied to the States, protects the citizen against the State itself and all its creatures—Boards of Education not excepted. These have, of course, important, delicate, and highly discretionary functions, but none that they may not perform within the limits of the Bill of Rights. That they are educating the young for citizenship is reason for scrupulous protection of Constitutional freedoms of the individual, if we are not to strangle the free mind at its source and teach youth to discount important principles of our government as mere platitudes.

469 U.S. at 334, 105 S.Ct. at 738–39 (quoting *West Virginia State Board of Education v. Barnette*, 319 U.S. 624, 637, 63 S.Ct. 1178, 1185, 87 L.Ed. 1628 (1943)).

It might be expedient to allow a general search of students in a public school set-

---

**8.** This Court does not decide whether individualized suspicion is an essential element of the reasonableness standard for all searches by school authorities. Although "some quantum of individual suspicion is usually a prerequisite to a constitutional search[,] ... the Fourth Amendment imposes no irreducible requirement of such suspicion." *United States v. Martinez–Fuerte*, 428 U.S. 543, 560–61, 96 S.Ct. 3074, 3084, 49 L.Ed.2d 1116 (1976). For example, a different result might obtain where a teacher saw a handgun brandished in the midst of a crowd of students. Here the immediate and serious risk of harm could be determinative in balancing the interests at stake. This hypothetical is distinguished from the case at bar by the fact that it clearly involves a student in possession of the

gun, unlike the magic marker and marijuana searches in the case at bar, in addition to the obvious difference in the risks involved. *Compare United States v. Doe*, 819 F.2d 206 (9th Cir.1985) (warrantless entry into residence justified by officer's reasonable, good faith belief that substantial risk of harm justified immediate search for weapon) *and United States v. Costa*, 356 F.Supp. 606 (D.D.C.), *aff'd mem.*, 479 F.2d 921 (D.C.Cir.1973) (narcotics definitely dangerous but not so immediately dangerous as to justify warrantless entry); *see generally New York v. Quarles*, 467 U.S. 649, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984) (public safety exception to *Miranda* requirement based on presence of gun).

ting at the whim of the principal. Such a result might indeed enhance the principal's stated goal of increased order in the school. However, neither the Constitution nor its primary guardian—the federal judiciary—should bow to expediency. The constitutional rights of all citizens should be affirmed and protected in spite of any systemic discomfort created by mandating respect for those rights. Even though it is easier and more effective, from a school administrator's point of view, to be able to authorize general searches without the burden of individualized suspicion, this Court finds no genuine, material issue of fact as to the claimed unconstitutionality of the searches under consideration, and holds that plaintiffs are entitled to summary judgment thereon.

Except for claims arising out of the magic marker search, plaintiffs' motion for summary judgment will be granted.

### III. MOTION OF THE AHS DEFENDANTS

The AHS defendants have moved for summary judgment in their favor on the magic marker claims. As explained above, plaintiffs' motion on the same subject must be denied because of a credibility issue arising in discovery, and defendants' motion will be denied for the same reason. The remaining issues raised by the motion concern the relief to be granted in this case.

*Qualified Immunity*

The AHS defendants are entitled to summary judgment on their claim of qualified immunity. This issue "turns on the 'objective legal reasonableness' of the action[,] *Harlow* [*v. Fitzgerald*], 457 U.S. [800, 814, 102 S.Ct. 2727, 2736, 73 L.Ed.2d 396 (1982)] ..., assessed in light of the legal rules that were 'clearly established' at the time it was taken. [*Id.* at 818, 102 S.Ct. at 2738.]" *Anderson v. Creighton,* — U.S. —, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987).

This Court's essential determination on the Fourth Amendment issue is that the individualized suspicion requirement of certain pre-*T.L.O.* cases considering school searches retains its vitality after *T.L.O.* This determination cannot be taken as "clearly established" for the purpose of imposing monetary damages on the defendants because the issue has not been authoritatively decided by the United States Supreme Court, the United States Court of Appeals for the Fourth Circuit, or the Supreme Court of Virginia. *Wallace v. King,* 626 F.2d 1157, 1161 (4th Cir.1980), *cert. denied,* 451 U.S. 969, 101 S.Ct. 2045, 68 L.Ed.2d 348 (1981). The *T.L.O.* Court explicitly left this issue open. 469 U.S. at 342 n. 8, 105 S.Ct. at 743 n. 8. While the defendants must certainly be charged with knowledge that the Fourth Amendment protects students' legitimate privacy interests, plaintiffs have not shown to the requisite level of specificity that the defendants should have known that the actions taken in this case would violate those interests. *See Anderson v. Creighton,* — U.S. —, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987) (in light of pre-existing law, particular action's unlawfulness must be apparent); *Jensen v. Conrad,* 570 F.Supp. 91, 102 (D.S.C.1983), *aff'd,* 747 F.2d 185 (4th Cir. 1984), *cert. denied,* 470 U.S. 1052, 105 S.Ct. 1754, 84 L.Ed.2d 818 (1985) (same, applying Wallace standard for determining pre-existing law).

The AHS defendants' summary judgment motion will be granted as to qualified immunity against the federal and state claims.

*Punitive Damages*

In the preceding section, it was determined that defendants cannot be charged with knowledge of the individualized suspicion requirement in the circumstances of this case. It follows, therefore, that no jury could reasonably award punitive damages for disregarding such a requirement. In any event, plaintiffs have not pointed to sufficient evidence of defendants' " 'reckless or callous indifference' " or "evil intent" to justify sending the issue to a jury. *See Cooper v. Dyke,* 814 F.2d 941, 948 (4th Cir.1987) (quoting *Smith v. Wade,* 461 U.S. 30, 56, 103 S.Ct. 1625, 1640, 75 L.Ed.2d 632 (1983)); *accord Giant of Virginia v. Pigg,* 207 Va. 679,

685–86, 152 S.E.2d 271, 277 (1967) ("conscious disregard of the rights of others"). Accordingly, there is no genuine dispute on this point and summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed. 2d 202 (1986).

*Declaratory and Injunctive Relief*

Having established that an unconstitutional search was carried out, plaintiffs are entitled to the declaration of rights sought in this case. This Court has jurisdiction to give a declaratory judgment accordingly and to order any injunctive relief shown to be appropriate upon further proceedings. *See Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908); *see also Ross v. Meese,* 818 F.2d 1132, 1135 (4th Cir.1987); *Wallace v. King,* 626 F.2d at 1161. Defendants motion will be denied as to declaratory and injunctive relief.

## IV. ORDER

For the reasons stated above, it is hereby ORDERED as follows:

Plaintiffs' motion for summary judgment is GRANTED as to the "Walkman" and marijuana searches, but DENIED as to the magic marker search.

The motion of defendant Harrison–Jones for summary judgment is GRANTED.

The AHS defendants' motion for summary judgment is GRANTED as to the claims for compensatory and punitive damages and as to the hand-sniff incident, but DENIED as to all other matters.

In addition to proceedings on the magic marker claim, the desirability of injunctive relief, and any other matter necessary to a final determination of this cause, the AHS defendants are entitled to a hearing on the availability and amount of attorney's fees in this case under 42 U.S.C. section 1988.

A final judgment order incorporating this memorandum and the relief to be granted will be entered at the appropriate time.