607 A.2d 793

**In the Interest of S.F.**

**Appeal of S.F.**

Superior Court of Pennsylvania.

Argued March 11, 1992.

Filed May 12, 1992.

---

Bradley S. Bridge, Philadelphia, for appellant.

Norman Gross, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before WIEAND, TAMILIA and CERCONE, JJ.

TAMILIA, Judge:

Appellant, S.F., appeals from the trial court's Order of May 17, 1991, committing him to the Abraxas Foundation as a consequence of being found delinquent of knowingly or intentionally possessing a controlled substance.[1]

The trial court presented an accurate summary of the facts surrounding appellant's arrest.

On March 8, 1991, at approximately 8:20 a.m., the defendant and two other students were observed in the hallway at the Charles Carroll High School by Edmond Stone, a plainclothes police officer for the School District of Philadelphia for four years who had made 15 to 20 narcotics arrests during that time. Stone observed the defendant from approximately 15 feet away. (N.T., p. 5). He had a clear plastic bag in his right hand and a wad of loose bills in his left hand. (N.T., p. 5). Upon seeing Stone, the defendant stuffed the plastic bag in his right-hand side jacket pocket and shoved the money into his pants pocket and became noticeably nervous. (N.T., p. 6). Stone could not see the contents of the clear plastic bag because of the way it was being held. (N.T., p. 7). Stone approached S.F. and asked him to step into an office.

Prior to this incident, Stone had received information from approximately six or seven different people, both students and teachers, that S.F. had been flashing large sums of money around. (N.T., pp. 8–9). Several people had made comments to Stone concerning narcotics and the defendant, S.F. (N.T., p. 10).

Stone asked the vice principal of the school to accompany him into the office. Once inside the office, Stone asked S.F. to empty his jacket pocket. S.F. removed some articles from his pocket, none of which was the clear plastic bag. Stone then reached into the defendant's jacket pocket and pulled out two plastic bags, one of which contained 20 vials and another, which contained

1. 35 Pa.S. § 780–113(a)(16).

10 vials. Stone then proceeded to call the Philadelphia police and asked for a wagon to transport the defendant to the Narcotics Unit at the Philadelphia Police Administration Building. Later, $108 was taken from defendant's person.

(Slip Op., McCabe, J., 8/2/91, pp. 2–3.)

After a hearing, the trial court denied appellant's motion to suppress the cocaine, stating the officer had a reasonable suspicion under the totality of the circumstances to believe appellant was involved in the possession of drugs, a violation of school rules, and, therefore, the officer's search of appellant's person was justified and did not violate his constitutional right to privacy. (*Id.* at 4.)

■ Appellant argues the trial court erred in refusing to suppress the narcotics found during the search because the officer did not have reasonable suspicion to perform the search. Appellant stresses the officer never saw any drug transaction involving appellant but nonetheless attempted to justify the search on the facts appellant had placed currency and a clear plastic bag in his jacket when he saw the officer and the officer had heard rumors concerning narcotics and appellant.

"Our standard of review on appeal from a suppression ruling is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are in error." *Commonwealth v. Patterson*, 405 Pa.Super. 17, 591 A.2d 1075 (1991). We hold the trial court did not err in concluding, based upon the facts taken as a whole, the officer had a reasonable suspicion to conduct the search.

In *New Jersey v. T.L.O.*, 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985), the United States Supreme Court held that searches conducted by public school officials are covered by the fourth amendment. The court explained children maintain legitimate expectations of privacy in school.

Students at a minimum must bring to school not only the supplies needed for their studies, but also keys, money,

and the necessaries of personal hygiene and grooming. In addition, students may carry on their persons or in purses or wallets such nondisruptive yet highly personal items as photographs, letters, and diaries. Finally, students may have perfectly legitimate reasons to carry with them articles of property needed in connection with extracurricular or recreational activities. In short, schoolchildren may find it necessary to carry with them a variety of legitimate, noncontraband items, and there is no reason to conclude that they have necessarily waived all rights to privacy in such items merely by bringing them onto school grounds.

*Id.* at 339, 105 S.Ct. at 741, 83 L.Ed.2d at 733. However, in deciding whether the search is justified, due to the substantial interests of the school administration in maintaining discipline and preventing crime within the school, the Court determined the proper standard to be one of reasonable suspicion rather than probable cause. *Id.*

[T]he legality of a search of a student should depend simply on the reasonableness, under all the circumstances, of the search. Determining the reasonableness of any search involves a twofold inquiry: first, one must consider "whether the ... action was justified at its inception," Terry v. Ohio, 392 US [1] at 20, 20 LEd2d 889, 88 SCt 1868, 44 Ohio Ops2d 383; second, one must determine whether the search as actually conducted "was reasonably related in scope to the circumstances which justified the interference in the first place," ibid. Under ordinary circumstances, a search of a student by a teacher or other school official will be "justified at its inception" when there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school. Such a search will be permissible in its scope when the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction.

*Id.* at 341–342, 105 S.Ct. at 742–743, 83 L.Ed.2d at 734–735 (footnotes omitted); *See In the Interest of Dumas,* 357 Pa.Super. 294, 515 A.2d 984 (1986) (adopting reasonable suspicion standard of *T.L.O.*).

Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause.... Reasonable suspicion, like probable cause, is dependent upon both the content of information possessed by police and its degree of reliability. Both factors—quantity and quality—are considered in the "totality of the circumstances—the whole picture," *United States v. Cortez,* 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981), that must be taken into account when evaluating whether there is reasonable suspicion.

*Commonwealth v. Patterson,* 405 Pa.Super. 17, 19, 591 A.2d 1075, 1077 (1991), quoting *Alabama v. White,* 496 U.S. 325, 330, 110 S.Ct. 2412, 2416, 110 L.Ed.2d 301, 309 (1990).

In concluding the officer's suspicion was unreasonable and did not justify the substantial intrusion of the search, appellant examines individually each factor upon which the officer based his suspicion. Appellant's brief, pp. 8–11.[2] Appellant illogically deduces, since each of these factors was individually insufficient, the totality of the circumstances was also insufficient to establish reasonable suspicion.

■ An officer does not have to analyze separately the importance of each observation and piece of information he acquires when effectuating an intrusion. Rather, the officer is lawfully entitled to consider the aggregate effect of all of the information available to him at the time of the

2. The cases appellant cites in support of this argument are distinguishable because they examine each of the factors separately and do not deal with the circumstances in aggregate.

search. *Commonwealth v. Guest*, 389 Pa.Super. 286, 566 A.2d 1247 (1989), *appeal denied*, 525 Pa. 642, 581 A.2d 569 (1990). Here, Officer Stone saw appellant carrying a clear plastic bag and a wad of bills, noticed appellant becoming nervous and quickly putting the bag and bills in his pocket upon seeing him, and remembered hearing rumors about appellant's involvement with narcotics. In totality, these observations combined with this information were enough to arouse a reasonable suspicion in the officer that appellant was carrying illegal drugs and, therefore, the officer's action was justified at its inception.

■ The search itself, the act of removing the plastic bags from appellant's pocket, was not excessively intrusive since the officer only wanted to determine what was inside the clear bag appellant had placed in his pocket and appellant failed to comply with the request to totally empty his pocket. Thus we conclude the officer satisfactorily met both parts of the *T.L.O.* reasonable suspicion test.

In light of the foregoing discussion, we affirm the trial court's Order adjudicating appellant delinquent.

Order affirmed.