OPINION OF THE COURT
Levine, J.
There is no dispute over the facts giving rise to appellant’s adjudication of juvenile delinquency upon his admission to an act that, if committed by an adult, would constitute criminal possession of a weapon in the fourth degree. On November 29, 1990 appellant, then 15 years old, arrived at the high school he attended in The Bronx without a proper student identification card. He was directed by a school security officer to report to the office of the Dean to obtain a new card. In accordance with school policy, he was required to leave his cloth book bag with the security officer until he had obtained the proper identification. When appellant tossed the book bag on a metal shelf before proceeding beyond the school lobby to the Dean’s office, the security officer heard a metallic "thud” which he characterized as "unusual”. He ran his fingers over the outer surface of the bottom of the bag and felt the outline of a gun. The security officer then summoned the Dean who also discerned the shape of a gun upon feeling the outside of appellant’s book bag. The bag was brought to the Dean’s office and opened by the head of school security, revealing a small hand gun later identified as a .38 Titan Tiger Special.
A juvenile delinquency petition was filed in Family Court accusing appellant of acts constituting criminal possession of a weapon in the second, third and fourth degrees, defacement of a weapon and unlawful possession of a weapon by a person under age 16. Family Court denied appellant’s motion to *591 suppress the gun. Following a fact-finding hearing, Family Court dismissed the count of the petition accusing appellant of an act that, if committed by an adult, would constitute the crime of criminal possession of a weapon in the second degree, and found that he had committed all the acts alleged in the remaining counts of the petition. At the dispositional hearing, Family Court placed appellant with the Division for Youth.
On appeal, the Appellate Division upheld Family Court’s denial of appellant’s motion to suppress (184 AD2d 252). It held that the unusual metal thud heard by the security officer when appellant deposited his book bag was sufficient to support a reasonable suspicion that the bag contained a weapon, thereby justifying a "frisk” of the outside of the bag. The Court further ruled that when the frisk touching revealed the presence in the bag of an object that felt like a gun, the school authorities were justified in searching the inside of the bag. The Court, however, reversed the adjudication of juvenile delinquency and remanded for a new fact-finding hearing because of an error in the introduction into evidence of a ballistics report regarding the gun found in appellant’s satchel. Upon remand to Family Court, the proceeding against appellant was disposed of by his admission to an act that, if committed by an adult, would constitute the crime of criminal possession of a weapon in the fourth degree. This Court granted permission to appeal in order to review the propriety of the Appellate Division’s ruling upholding Family Court’s denial of appellant’s motion to suppress.
 We affirm. Although minimally intrusive, the purposeful investigative touching of the outside of appellant’s book bag by the school security officer (i.e., to acquire knowledge about the bag’s contents) falls marginally within a search for constitutional purposes (see, Arizona v Hicks, 480 US 321, 325; see also, United States v Most, 876 F2d 191, 193-194). Also, appellant is quite correct in contending that the metallic thud heard by the security officer when appellant put the book bag down was by itself insufficient to furnish a reasonable suspicion that the bag contained a weapon. We conclude, however, that a less rigorous premonition concerning the contents of the bag was sufficient to justify the investigative touching of the outside of the bag. When that touching disclosed the presence of a gun-like object in the bag, there was reasonable suspicion to justify the search of the inside of the bag.
In People v Scott D. (34 NY2d 483), this Court held that *592 students attending public schools are protected by the constitutional ban against unreasonable searches and seizures. Scott D. involved a school search of a student for illegal drugs. We further held in Scott D. that inherent in determining whether a school search was reasonable is a "balancing of basic personal rights against urgent social necessities” (id., at 488) and that, "[g]iven the special responsibility of school teachers in the control of the school precincts and the grave threat, even lethal threat, of drug abuse among school children, the basis for finding sufficient cause for a school search will be less than that required outside the school precincts” (id., at 488 [emphasis supplied]).
Employing an analysis similar to that of People v Scott D. (supra), the United States Supreme Court in New Jersey v T. L. O. (469 US 325) also concluded that the Fourth Amendment of the United States Constitution applies to searches of students by school authorities, but held that less cause is required to justify such a search than is required of law enforcement authorities searching persons or their effects outside school premises. Thus, the Supreme Court held that a determination of the appropriate standard of reasonableness to govern a certain class of searches requires a balancing: "On one side of the balance are arrayed the individual’s legitimate expectations of privacy and personal security; on the other, the government’s need for effective methods to deal with breaches of public order” (id., at 337). The Court in New Jersey v T. L. O. held that, ordinarily, searches by school authorities of the persons or belongings of students may be made upon "reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school” (id., at 342). The Court applied the reasonable suspicion standard in validating a teacher’s full search of the inside of a student’s purse for cigarettes, during which evidence of her involvement in drug dealing was revealed.
We agree that for searches by school authorities of the persons and belongings of students, such as that conducted in New Jersey v T. L. O. (supra), the reasonable suspicion standard adopted in that case for Fourth Amendment purposes is also appropriate under our State Constitution (NY Const, art I, § 12). In the instant case, however, the investigative touching of the outer surface of appellant’s book bag falls within a class of searches far less intrusive than those which, under New Jersey v T. L. O., require application of the reasonable *593 suspicion standard. Applying the balancing process required under People v Scott D. (supra) and New Jersey v T. L. O. (supra), it is undeniable that appellant had only a minimal expectation of privacy regarding the outer touching of his school bag by school security personnel, even for purposes of learning something regarding its contents, when he left the bag with the security officer pursuant to the school policy requiring this until he obtained a valid identification card. On the other hand, it seems equally undeniable that, in the balancing process, prevention of the introduction of hand guns and other lethal weapons into New York City schools such as this high school is a governmental interest of the highest urgency. The extreme exigency of barring the introduction of weapons into the schools by students is no longer a matter of debate.
Thus, the balancing process ordained by People v Scott D. (supra) and New Jersey v T. L. O. (supra) leads to the conclusion that a less strict justification applies to the limited search here than the reasonable suspicion standard applicable for more intrusive school searches. In this regard, we find it noteworthy that the Supreme Court in New Jersey v T. L. O. (supra) specifically disclaimed that its decision made some quantum of individualized suspicion an essential element of every school search (see, id., at 342, n 8). The Supreme Court has elsewhere made it clear that, at least outside the context of criminal investigations by law enforcement officers, individualized suspicion is not a constitutional floor below which any search must be deemed unreasonable. There may be circumstances in which, because the privacy interests involved in the case are minimal and are overborne by the governmental interests in jeopardy if a higher standard were enforced, a search may be reasonable despite the absence of such suspicion (see, Skinner v Railway Labor Executives’ Assn., 489 US 602, 624; see also, United States v Martinez-Fuerte, 428 US 543, 561-562). We need not apply these precedents, however, to sustain the actions of the school authorities in the instant case.
Because appellant’s diminished expectation of privacy was so clearly outweighed by the governmental interest in interdicting the infusion of weapons in the schools, we think the "unusual” metallic thud heard when the book bag was flung down — quite evidently suggesting to the school security officer the possibility that it might contain a weapon — was sufficient justification for the investigative touching of the *594 outside of the bag, thus rendering that limited intrusion reasonable (and not based on mere whim or caprice) for constitutional purposes (cf., People v Hollman, 79 NY2d 181, 190-191). Our application in the instant case of a graduated standard of reasonableness is, of course, sanctioned by and premised on the minimal nature of the search, and that it was conducted by school officials for the special needs of school security and not for a criminal investigative purpose (see, O’Connor v Ortega, 480 US 709, 725-726; see also, Preiser, 1987 Survey of New York Law — Criminal Procedure, 39 Syracuse L Rev 237, 249-251 [1988]). Once the touching of the outer surface of the bag revealed the presence of a gun-like object inside, school authorities had a reasonable suspicion of a violation of law justifying the search of the contents of the bag (New Jersey v T. L. O., supra).
We are unpersuaded by our dissenting colleague’s contention that the limited intrusion upon appellant’s privacy interest in his book bag, by the initial touching of the outside of the bottom of the bag to ascertain whether it may have contained a weapon, could only be justified on the school security officer’s reasonable suspicion that such was so. In effect, despite vague professions to the contrary, the dissent is contending that reasonable suspicion is a constitutional floor for purposes of all types of searches, however limited, in a school setting or elsewhere, and irrespective of who conducts the search. As we have already noted, New Jersey v T. L. O. (supra) cannot be read to support that position, and it has been rejected by the Supreme Court in other cases outside the context of police searches during criminal investigations (see, e.g., Camara v Municipal Ct., 387 US 523, 538-539). The dissent instead supports this position by reliance on Terry v Ohio (392 US 1) and this Court’s decisions in People v Diaz (81 NY2d 106; cf., Minnesota v Dickerson, 508 US —, 113 S Ct 2130) and Matter of Marrhonda G. (81 NY2d 942). The dissent claims that applying a lesser standard than reasonable suspicion to justify the touching of the outside of appellant’s bag "blurs the all-important distinction between searches and such lesser forms of intrusion as limited Terry patdowns” (dissenting opn, at 597 [emphasis supplied]). The Supreme Court in Terry described the intrusion in that case as "a careful exploration of the outer surfaces of a person’s clothing all over his or her body in an attempt to find weapons” (Terry v Ohio, supra, at 16), and characterized it as "a serious intrusion upon the sanctity of the person, which may inflict great indignity” *595 (id., at 17). The primary sense in which, in Terry, the "frisk” of the person was characterized and then justified as a "limited search”, and thus less than a full search, was that "it must be limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby” (id., at 26).
This concept of limited search in Terry is precisely what was applied in People v Diaz (81 NY2d 106, supra). "Under both the State -and Federal Constitutions, the protective pat-down exception to the warrant requirement authorizes a limited search * * * to determine whether a weapon is present” (id., at 109 [emphasis supplied]). Diaz declined to extend the Terry warrantless search exception to a frisk disclosing other forms of contraband. "Once an officer has concluded that no weapon is present, the search is over and there is no authority for further intrusion” (id., at 109). Diaz and Terry simply do not apply to a less intrusive touching of the outside of a book bag by school personnel, after possession of the bag had been lawfully relinquished.
Likewise, the holding in Matter of Marrhonda G. (81 NY2d 942, supra) is no bar to the touching of the outer surface of appellant’s book bag on less than reasonable suspicion that it contained a weapon. Marrhonda G. refused to create a "plain touch” justification for the warrantless searching of the contents of a travel bag. Had the holding in Marrhonda G. been intended to bar the touching of the outer surface of the travel bag in that case, the Court clearly would not have suggested that "the police [could] have simply detained the bag while they obtained a warrant to search it” (id., at 945), since the information necessary to obtain a search warrant could only have been gained from touching the bag.
The dissent’s attempt to rigidify reasonable suspicion as the constitutionally mandated minimum standard for nonpolice searches, irrespective of minimal levels of intrusiveness, is also inconsistent with the flexible balancing of expectations of privacy/State interests approach dictated by New Jersey v T. L. O. (supra) and People v Scott D. (supra). Thus, Family Court’s denial of appellant’s motion to suppress should be upheld.
Accordingly, the judgment of Family Court appealed from and the order of the Appellate Division brought up for review should be affirmed, without costs.