887 P.2d 645

**In the Interest of Jane DOE, Born on May 5, 1977, Minor.**

No. 17417.

Supreme Court of Hawai'i.

Dec. 16, 1994.

Richard W. Pollack, Public Defender (Theodore Y. H. Chinn, Deputy Public Defender, with him on the briefs), Honolulu, for minor-appellant.

Blaine J. Kobayashi (Ryan E. Jimenez, with him on the brief), Deputy Pros. Attys., Lihue, for plaintiff-appellee State of Hawai'i.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

MOON, Chief Justice.

Minor-appellant Jane Doe (Minor), appeals from the family court's order denying her motion for reconsideration of the family court's order determining Minor a "law violator"[1] for promoting a detrimental drug in the third degree. Minor, a high school student, was discovered concealing a bag of marijuana in her purse. Contending that the search of her purse by the school principal was unlawful, Minor moved to suppress the incriminating evidence. The family court determined that the search was "reasonable" and denied Minor's motion to suppress. Minor moved for reconsideration of the court's ruling, which was also denied.

We explicitly adopt the standards set out in the United States Supreme Court's decision in *New Jersey v. T.L.O.*, 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985), and hold that: (1) children in school have legitimate expectations of privacy that are protected by article I, section 7 of the Hawai'i Constitution and the fourth amendment to the United States Constitution; (2) public school officials act as representatives of government and, consequently, must comply with article I, section 7 of the Hawai'i Constitution and the fourth amendment to the United States Constitution; (3) because the warrant requirement is particularly unsuited to the school environment, in that requiring a teacher to obtain a warrant before searching

---

**1.** HRS § 571–2 (1985) describes "a law violator under section 571–11(1)" as any minor "who comes into the family court upon allegations [that the minor] has committed an act which would constitute a crime if committed by an adult[.]"

a child suspected of an infraction of the school rules or of the criminal law would unduly interfere with the maintenance of the swift and informal disciplinary procedures needed in the schools, public school officials do not need search warrants or probable cause to search or seize evidence from students under their authority; (4) searches or seizures in the school context must be reasonable under all the circumstances and must be (a) justified at their inception and (b) reasonably related in scope to the circumstances which justified the interference in the first place.

Because it was reasonable for the principal in this case to suspect that Minor had violated the law and that the incriminating evidence would be found in Minor's purse, we conclude that the search was lawfully conducted; accordingly, we affirm.

## I. BACKGROUND

On October 16, 1992, pursuant to HRS § 571–11(1) (1985), the State filed a petition in the family court alleging that:

> [O]n or about the 8th day of September, 1992, in the County of Kauai, State of Hawaii, [Minor] did knowingly possess marijuana, thereby committing the offense of Promoting a Detrimental Drug in the Third Degree in violation of Section 712–1249 of the Hawaii Revised Statutes.

Prior to the adjudication hearing on the petition, Minor filed a motion to suppress the admission of the bag of marijuana found in her purse as evidence. For purposes of the motion, Minor and the State stipulated to the following facts.

Minor is a student at Kapa'a High School (high school) in the County of Kaua'i. Kapa'a Elementary and Intermediate Schools are located within the high school campus. On September 8, 1992, at approximately 9:10 a.m., the vice-principal of the intermediate school observed two of his students heading off campus. School was in session that day; school hours are from 7:45 a.m. to 2:30 p.m. During these hours, no student may leave campus without authorization. The two students, who were not authorized to leave campus, were headed in the direction of the "Tunnel."

The "Tunnel" is a specific area of a culvert system located across the street from the high school. It is approximately six feet in diameter and several hundred feet in length. Within the Kapa'a school community, the "Tunnel" is known to be an area where students congregate to smoke tobacco cigarettes and marijuana.

The vice-principal promptly called the campus security guard for assistance, and they pursued the students. As the two men approached the "Tunnel," they detected the odor of burning marijuana emanating from a grate that is part of the "Tunnel." They also observed four students congregating near the grate, but could not specifically identify them at that point. No one else was in the "Tunnel."

The security guard proceeded to the end of the "Tunnel" and ordered the students to exit. Four students exited: the two intermediate school students, Minor, and another high school student. Minor and the other high school student were each carrying a purse. The two intermediate school students carried nothing in their hands. All four students were determined truant.

The vice-principal took custody of the two intermediate school students, and the security guard took custody of Minor and the other high school student and brought them to the high school principal's office. The principal, who was familiar with the reputation of the "Tunnel," was informed that the students had been found there and that the odor of burning marijuana had been detected.

The principal then asked the two students to empty their pockets and purses. When Minor emptied her purse, a small bag of marijuana was discovered. The principal summoned the police, who confiscated the evidence.

The above stipulated facts were adopted as findings of fact (FOF). The court also made one additional FOF: "At least one of the students was in possession of and smoking marijuana." FOF No. 26.

In denying Minor's motion to suppress, the court concluded:

1. It was reasonable for [the principal] to suspect that the minor was involved in the possession of and smoking of marijuana.

2. It was reasonable for [the principal] to suspect that the minor may be carrying marijuana in her purse.

3. The search of the minor's purse was reasonable in view of the minor's presence with the three other students in an off-limits secluded area where at least one of the students was possessing and smoking marijuana, the likelihood that more marijuana was in the possession of at least one of the students, the students would be in contact with other students whose grades ranged from Kindergarten to 12, and the search was not excessively intrusive.

Accordingly, on June 30, 1993, the court entered a "decree" adjudicating Minor a law violator within the purview of HRS § 571–11(1) for having committed the offense of promoting a detrimental drug in the third degree, in violation of HRS § 712–1249. The court "ordered, adjudged, and decreed" that Minor be placed on probation until further order of the court, subject to the "rules of probation" and several special conditions, which conditions are not on appeal. Minor filed a "motion for reconsideration of the facts involved," which the court denied, and this timely appeal followed.

## II. *STANDARD OF REVIEW*

■ On appeal, the trial court's findings of fact are reviewed under the "clearly erroneous" standard. "A finding of fact is clearly erroneous when, despite evidence to support the finding, the appellate court is left with the definite and firm conviction in reviewing the entire evidence that a mistake has been committed." *Hawai'i's Thousand Friends v. City and County of Honolulu,* 75 Haw. 237, 248, 858 P.2d 726, 732 (1993) (citation and internal brackets omitted). The determination of whether a search was lawfully conducted is entirely a question of law, which this court reviews *de novo* under the right/wrong standard. *See In re Holt,* 75 Haw. 224, 232, 857 P.2d 1355, 1359, *reconsideration denied,* 75 Haw. ——, 863 P.2d 989 (1993) (citation omitted).

## III. *DISCUSSION*

### A. *FOF No. 26*

Minor contends that the court erred in finding that "[a]t least one of the students was in possession of and smoking marijuana," FOF No. 26, because: (1) none of the students were actually seen smoking or handling marijuana; (2) "[a]lthough no one else was in the culvert at the time the two school officials entered it, there could have been other individuals in the culvert who had been smoking marijuana but departed immediately before the arrival of the school officials"; and (3) "[t]he presence of an odor of marijuana smoke does not reasonably lead to the inference that it must have been one of the students who was in possession of and was smoking marijuana." Minor's contentions are without merit.

■ We believe the court had substantial evidence to support FOF No. 26. Minor was found in the "Tunnel," a place where students were known to congregate to smoke cigarettes and marijuana. This fact was known throughout the school community. As the school officials approached this area, they detected the distinct odor of burning marijuana emanating from a grate near the area where four students were congregating. When ordered to exit the "Tunnel," four students, including Minor, emerged; there was no one else in the "Tunnel." From the preceding probative facts, the court logically deduced that at least one of the four students was in possession of and smoking marijuana. Minor's speculation that there may have been other individuals in the "Tunnel" smoking marijuana, who departed immediately prior to arrival of the school officials, is completely devoid of factual support. Although Minor may construe facts differently, as long as there is "credible evidence of sufficient quantity and probative value to justify a reasonable person in reaching conclusions that support the FOFs, the FOFs cannot be set aside." *Amfac, Inc. v. Waikiki Beachcomber, Inv. Co.,* 74 Haw. 85, 116, 839 P.2d 10, 28, *reconsideration denied,* 74 Haw. 650, 843 P.2d 144 (1992) (citation omitted). In view of

the above undisputed facts, we are not "left with the definite and firm conviction in reviewing the entire evidence that a mistake has been committed." *Hawaii's Thousand Friends*, 75 Haw. at 248, 858 P.2d at 732 (citation omitted). Accordingly, we hold that FOF No. 26 was not "clearly erroneous."

### B. *The Propriety of the Search*

 We next address whether the motion to suppress the marijuana found in Minor's purse was properly denied. First, it is axiomatic that "[m]inors, as well as adults, are protected by the Constitution and possess constitutional rights." *Planned Parenthood of Missouri v. Danforth*, 428 U.S. 52, 74, 96 S.Ct. 2831, 2843, 49 L.Ed.2d 788 (1976). Among these rights is the right to be free from unreasonable searches, seizures, and invasions of privacy found in article I, section 7 of the Hawai'i Constitution[2] and fourth and fourteenth amendments to the United States Constitution.[3] Second, it is equally well settled that the fourth amendment's protection, which only applies to governmental action, applies to searches conducted by public school officials who act as representatives of the state. *New Jersey v. T.L.O.*, 469 U.S. 325, 336, 105 S.Ct. 733, 739–740, 83 L.Ed.2d 720 (1985); *In re William G.*, 40 Cal.3d 550, 557–58, 709 P.2d 1287, 1291, 221 Cal.Rptr. 118, 121–22 (1985). Mindful of these constitutional principles, we examine whether the search of Minor's purse was lawfully conducted under the fourth amendment and article I, section 7.

Traditionally, "[t]his court has always been mindful of its obligation to afford defendants the minimum protection required by federal interpretations of the … Federal Constitution[.]" *State v. Hoey*, 77 Hawai'i 17, 36, 881 P.2d 504, 523 (1994) (citation and internal

quotation marks omitted). However, "as the ultimate judicial tribunal with final, unreviewable authority to interpret and enforce the Hawai'i Constitution, we are free to give broader protection under the Hawai'i Constitution than that given by the federal constitution," *id.* at 37–38, 881 P.2d at 523 "when logic and a sound regard for the purposes of [the constitutional] protection … so warrant." *State v. Kaluna*, 55 Haw. 361, 369, 520 P.2d 51, 58 (1974).

In determining whether broader protection in the school context is warranted under article I, section 7 of the Hawai'i Constitution, we recognize, as the United States Supreme Court in *T.L.O.* noted that, "[a]lthough the underlying command of the Fourth Amendment is always that searches and seizures be reasonable, what is reasonable depends on the context within which a search [or seizure] takes place." *T.L.O.*, 469 U.S. at 337, 105 S.Ct. at 740 (emphasis added). Moreover, "the determination of the standard of reasonableness governing any specific class of searches [or seizures] requires balancing the need to search [or seize] against the invasion which the search or seizure entails." *Id.* (internal quotations and citations omitted).

As Justice Powell has noted, "[t]he primary duty of school officials and teachers … is the education and training of young people," *T.L.O.*, 469 U.S. at 350, 105 S.Ct. at 747 (Powell, J., concurring), and that a "[s]tate has a compelling interest in assuring that the schools meet this responsibility. Without first establishing discipline and maintaining order, teachers cannot begin to educate their students." *Id.* We further recognize, as also noted by the *T.L.O.* court, that disorder in schools has become unsettling; "drug use

---

**2.** Article I, section 7 of the Hawai'i Constitution provides:

> The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches, seizures and invasions of privacy shall not be violated; and no warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized or the communications sought to be intercepted.

**3.** The fourth amendment to the United States Constitution, which is applicable to the states through the fourteenth amendment, guarantees that:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated and no Warrants shall issue, but upon probable cause, supporting by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

**440**

and violent crime in schools have become major social problems." *T.L.O.*, 469 U.S. at 339, 105 S.Ct. at 741. Schools in Hawai'i have not been immune from these social problems which are responsible for a school environment in which students and school personnel alike are in fear for their safety. To say that such an environment is not conducive to learning would be a gross understatement. We perceive no sound or logical reason to afford our public school students greater constitutional protections than that afforded by the federal constitution. We therefore look to, and adopt, the minimum protection provided by the federal constitution as set out in the United States Supreme Court's seminal decision in *T.L.O.*

In *T.L.O.*, a teacher discovered a fourteen-year-old high school student (T.L.O.)[4] smoking in a lavatory, in violation of a school rule prohibiting such conduct. When questioned by the assistant vice-principal, T.L.O. denied the charge and claimed that she did not smoke at all. The assistant vice-principal then demanded to see T.L.O.'s purse. Upon opening the purse, he discovered a pack of cigarettes. As he removed the cigarettes from the purse, he noticed a package of cigarette rolling papers that are commonly associated with the use of marijuana. A thorough search of the purse further revealed a small quantity of marijuana, a pipe, several empty plastic bags, a substantial amount of cash in one-dollar bills, an index card listing students who apparently owed T.L.O. money, and two letters implicating T.L.O. in marijuana dealing. The assistant vice-principal turned over this evidence to the police, who instituted delinquency charges against T.L.O. *Id.* at 328–30, 105 S.Ct. at 735–36.

During the delinquency hearing, T.L.O. moved to suppress the evidence, alleging that the search of her purse violated the fourth amendment. The juvenile court concluded

that the search was reasonable, denied the motion to suppress, and adjudged T.L.O. delinquent. A divided Appellate Division of the New Jersey Superior Court affirmed the juvenile court, finding that there had been no fourth amendment violation. The New Jersey Supreme Court, however, reversed and ordered suppression of the evidence found in T.L.O.'s purse. Thereafter, the United States Supreme Court granted the State of New Jersey's petition for writ of certiorari. *Id.* at 330–31, 105 S.Ct. at 736–37.

A sharply divided Supreme Court[5] held that the search of T.L.O. did not violate the fourth amendment. The Court decided several important issues affecting student searches in public schools. First, based on the premise that school children enjoy the constitutionally protected expectations of privacy, *id.* at 338–39, 105 S.Ct. at 741, the Court held that the fourth amendment's prohibition against unreasonable searches and seizures is applicable to searches conducted by public school officials. *Id.* at 334, 105 S.Ct. at 738–39. Rejecting the argument that these officials are exempt from fourth amendment restrictions because they act *in loco parentis* in their dealings with the students, the Court explained that public school officials act as representatives of the state in carrying out searches and other disciplinary functions, and therefore, must comply with the restrictions of the fourth amendment. *Id.* at 336, 105 S.Ct. at 740.

Second, the Court dispensed with the search warrant requirement in the school setting because "requiring a teacher to obtain a warrant before searching a child suspected of an infraction of school rules (or of the criminal law) would unduly interfere with the maintenance of the swift and informal disciplinary procedures needed in the schools." *Id.* at 340, 105 S.Ct. at 742.

Most importantly, balancing the "[student's] legitimate expectations of privacy and

---

4. The initials "T.L.O." were used because defendant was a minor.

5. *T.L.O.* was a plurality opinion. Justice White wrote the majority opinion, in which Justices O'Connor, Powell, Rehnquist, and Chief Justice Burger joined. Justice Powell wrote a concurring opinion, in which Justice O'Connor joined.

Justice Blackmun also wrote an opinion concurring in the judgment. Justice Brennan, with whom Justice Marshall joined, concurred in part and dissented in part. Justice Stevens, with whom Justice Marshall joined, and with whom Justice Brennan joined in part, concurred in part and dissented in part.

the school's equally legitimate need to maintain an environment in which learning can take place[,]" the Court explained that the school setting demands relaxing "the restrictions to which searches by public authorities are ordinarily subject." *Id.* at 340, 105 S.Ct. at 742. "Ordinarily, a search—even one that may permissibly be carried out without a warrant—must be based upon 'probable cause' to believe that a violation of the law has occurred." *Id.* (citations omitted). However, the Court reasoned that "the substantial need of teachers and administrators for freedom to maintain order" in the school setting dictated a modification of "the level of suspicion of illicit activity needed to justify a search." *Id.* at 340–41, 105 S.Ct. at 742. Therefore, the Court concluded that "the legality of a search of a student should depend simply on the reasonableness, under all circumstances, of the search." *Id.* at 341, 105 S.Ct. at 742. This reduced level of suspicion, commonly referred to as the "reasonable suspicion" test, was adopted from *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), in which the Court recognized the legality of searches based on suspicions that, although "reasonable," did not rise to the level of probable cause. *T.L.O.,* 469 U.S. at 341, 105 S.Ct. at 742.

The "reasonable suspicion" test is two-prong:

> [F]irst, one must consider whether the ... action was justified at its inception, ... second, one must determine whether the search as actually conducted was reasonably related in scope to the circumstances which justified the interference in the first place[.] Under ordinary circumstances, a search of a student by a teacher or other school official will be "justified at its inception" when there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school. Such a search will be permissible in its scope when the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction.

*Id.* at 341–342, 105 S.Ct. at 742–743 (internal quotation marks, citations, and footnotes omitted).

Applying the "reasonable suspicion" test, the Court concluded that the search of T.L.O. was constitutional. The Court found that the initial search for cigarettes was "justified at its inception" because the report that T.L.O. had been smoking in the lavatory gave the assistant vice-principal reasonable grounds for suspecting that T.L.O. was carrying cigarettes and her purse would be an obvious place to find them. *Id.* at 345–46, 105 S.Ct. at 744–45. The Court further found that the discovery of the cigarette rolling papers, which was observed when the assistant vice-principal removed the pack of cigarettes, gave rise to a reasonable suspicion that T.L.O. was carrying marijuana; this suspicion justified the further exploration which turned up more evidence of drug-related activities. *Id.* at 347, 105 S.Ct. at 745–46. Therefore, the Court concluded that "the search resulting in the discovery of the evidence of marijuana dealings by T.L.O. was reasonable[.]" *Id.* at 347, 105 S.Ct. at 746.

▮▮▮ We explicitly recognize that public schools are a unique social environment, and teachers and administrators in public schools have a legitimate and substantial interest in maintaining discipline in the classroom and on school grounds to create an environment where learning can take place. We further recognize that, as the Court in *T.L.O.* accurately notes, "[m]aintaining order in the classroom has never been easy, but in recent years school disorder has often taken particularly ugly forms." 469 U.S. at 339, 105 S.Ct. at 741. Drug use and violent crime are socially detrimental forms of behavior in general, but in light of the schools' legitimate need to maintain order in an environment where our youth may learn, their repugnance is exacerbated. We therefore explicitly adopt the *T.L.O.* standard[6] and hold that:

---

**6.** We note that every jurisdiction that has had occasion to do so has likewise adopted *T.L.O.* *See e.g., Wynn v. Board of Education of Vestavia Hills,* 508 So.2d 1170 (Ala.1987); *Shamberg v. State,* 762 P.2d 488 (Alaska Ct.App.1988); *In the Matter of the Appeal in Pima County Juvenile Action No. 80484–1,* 152 Ariz. 431, 733 P.2d 316 (App.1987); *In re William G.,* 40 Cal.3d 550, 709

(1) children in school have legitimate expectations of privacy that are protected by article I, section 7 of the Hawai'i Constitution and the fourth amendment to the United States Constitution; (2) public school officials act as representatives of government and, consequently, must comply with article I, section 7 of the Hawai'i Constitution and the fourth amendment to the United States Constitution; (3) because the warrant requirement is particularly unsuited to the school environment, in that requiring a teacher to obtain a warrant before searching a child suspected of an infraction of the school rules or of the criminal law would unduly interfere with the maintenance of the swift and informal disciplinary procedures needed in the schools, public school officials do not need search warrants or probable cause to search or seize evidence from students under their authority; (4) searches or seizures in the school context must be reasonable under all the circumstances and must be (a) justified at their inception and (b) reasonably related in scope to the circumstances which justified the interference in the first place.

■ Turning to the facts at bar, because the principal was not obligated to first obtain a warrant to search minor's purse, the first and foremost query is whether there were reasonable grounds for suspecting that the search of Minor's purse would turn up evidence of marijuana use; stated differently, the query is whether the search was "justified at its inception." The following evidence is significant: (1) Minor was discovered during school hours in the "Tunnel," an area in which students congregate to smoke cigarettes and marijuana; (2) the reputation of the "Tunnel" was common knowledge within the school community; (3) the school officials detected the odor of burning marijuana emanating from a "Tunnel" grate; (4) the school officials found no one else in the "Tunnel" except for the four students; and (5) Minor and another student were carrying purses, a

likely storage place for marijuana. In view of such evidence, it is apparent that the principal had reasonable grounds to suspect that Minor may be concealing marijuana in her purse.

Minor, however, maintains that the evidence of her marijuana use was too attenuated to warrant a search of her purse. She contends that school officials did not actually observe her smoking marijuana. She further contends that, although no one else was observed in the "Tunnel" at the time school officials arrived, "there could have been other individuals in the culvert who had been smoking marijuana but departed immediately before the arrival of the school officials." Minor's contentions are purely speculative and without factual basis.

The principal's suspicion that Minor's purse may contain evidence of marijuana use was not an "inchoate and unparticularized suspicion or hunch." *Id.* at 346, 105 S.Ct. at 745 (quoting *Terry v. Ohio,* 392 U.S. at 27, 88 S.Ct. at 1883) (internal quotation marks omitted). Rather, it was based on his "'common-sense conclusion about human behavior' upon which 'practical people'—including government officials—are entitled to rely." *Id.* (quoting *United States v. Cortez,* 449 U.S. 411, 418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981)). He knew that the "Tunnel" was an area where truants congregated and smoked cigarettes and marijuana, a fact commonly known throughout the school community. Further, the security guard informed the principal that he had detected the odor of burning marijuana emanating from the "Tunnel" in which the four students, including Minor, had been found; no one else was observed. Indeed, the fact that other individuals may have been smoking marijuana in the "Tunnel" but who went undetected by the school officials is not beyond the realm of possibility. Admittedly, the school officials never actually observed the students smoking marijuana. However, "the requirement

P.2d 1287, 221 Cal.Rptr. 118 (1985); *People in Interest of P.E.A.,* 754 P.2d 382 (Colo.1988); *R.D.L. v. State,* 499 So.2d 31 (Fla.Dist.Ct.App. 1986); *In re Devon T.,* 85 Md.App. 674, 584 A.2d 1287 (1991); *Commonwealth v. Carey,* 407 Mass. 528, 554 N.E.2d 1199 (1990); *State v. Michael G.,* 106 N.M. 644, 748 P.2d 17 (1987); *Matter of*

*Gregory M.,* 82 N.Y.2d 588, 627 N.E.2d 500, 606 N.Y.S.2d 579 (1993); *In re S.F.,* 414 Pa.Super. 529, 607 A.2d 793 (1992); *Irby v. State,* 751 S.W.2d 670 (Tex.Ct.App.1988); *State v. Brooks,* 43 Wash.App. 560, 718 P.2d 837 (1986); *State v. Joseph T.,* 175 W.Va. 598, 336 S.E.2d 728 (1985).

of reasonable suspicion is not a requirement of absolute certainty: *'sufficient probability,'* not certainty, is the touchstone of reasonableness under the Fourth Amendment[.]" *Id.* at 346 (emphasis added) (citation omitted). Considering the information available to the principal just prior to the search, his suspicion that Minor may have been carrying marijuana in her purse was reasonable because it was supported by sufficient factual probability. Hence, the search was "justified at its inception."

▮ The second prong of the "reasonable suspicion" test requires that we determine whether the search was "reasonably related in scope to the circumstances which justified the interference in the first place." *T.L.O.*, 469 U.S. at 341, 105 S.Ct. at 743 (citation and internal quotation marks omitted). "[A] search will be permissible in its scope when the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction." *Id.* at 342, 105 S.Ct. at 743. Based upon the suspicion that the students had been smoking marijuana, the principal asked Minor and the other student to empty their pockets and purses. Teenage girls often carry personal belongings in their pockets or purse, and it is the most probable place for concealing a plastic bag of marijuana and related paraphernalia. Therefore, the search of the purse was reasonably related to the objective, which was to find evidence of marijuana use. Once Minor emptied her purse and the small bag of marijuana was discovered, the search ceased. The search was neither unreasonable nor excessively intrusive in view of the particular circumstances at hand. We, therefore, hold that the search was both justified at its inception and reasonable in scope.

Relying on Justice Brennan's dissent in *T.L.O.*, Minor raises a more fundamental question. She contends that full-scale searches in a school setting must be accompanied by "probable cause" rather than the less exacting reasonable suspicion standard. Justice Brennan criticized the majority's decision "to cast aside the constitutional probable-cause standard when assessing the constitutional validity of a schoolhouse search."

*Id.* at 357, 105 S.Ct. at 751. Indeed, the Supreme Court has not hesitated to adopt a fourth amendment standard of reasonableness that stops short of probable cause after carefully balancing the competing governmental and private interests. *Id.* at 341, 105 S.Ct. at 742–43. Justice Brennan noted, however, that such balancing of interests has been and must continue to be limited to "the context of minimally intrusive searches that serve[ ] crucial law enforcement interests." *Id.* at 360, 105 S.Ct. at 752. By way of example, he noted that the search in *Terry* was limited to the outer clothing. *Id.*

▮ In our opinion, Justice Brennan fails to fully acknowledge that the drug and crime situation in our public schools today is nothing short of a crisis. As stated by the majority, "[m]aintaining order in the classroom has never been easy, but in recent years, school disorder has often taken particularly ugly forms: drug use and violent crime in the schools have become major social problems." *Id.* at 339, 105 S.Ct. at 741. Students have the right of privacy and that right must be respected. *Id.* at 334, 105 S.Ct. at 738–39. However, "[a]gainst the [student's] interest in privacy must be set the substantial interest of teachers and administrators in maintaining discipline in the classroom and on school grounds." *Id.* at 339, 105 S.Ct. at 741. Consequently, "the school setting requires some easing of the restrictions to which searches by public authorities are ordinarily subject." *Id.* at 340, 105 S.Ct. at 742. In balancing the students' legitimate privacy interests with the government's equally legitimate need to provide an environment that is conducive to learning, we conclude that the public interest would best be served by the reasonable suspicion standard.

We therefore "join the majority of courts that have examined this issue in concluding that the accommodation of the privacy interests of school children with the substantial need of teachers and administrators for freedom to maintain order in the schools does not require strict adherence to the requirement that searches be based on probable cause[.]" *Id.* at 341, 105 S.Ct. at 742; *see also In re William G.*, 40 Cal.3d 550, 565, 709

P.2d 1287, 1296, 221 Cal.Rptr. 118, 127 (1985).

> State and federal courts considering these questions have struggled to accommodate the interests protected by the Fourth Amendment and the interest of the States in providing a safe environment conducive to education in the public schools. Some courts have resolved the tension between these interests by giving full force to one or the other side of the balance.... [However,] [t]he majority of courts that have addressed the issue of the Fourth Amendment in the schools have ... reached a middle position: the Fourth Amendment applies to searches conducted by school authorities, but the special needs of the school environment require assessment of the legality of such searches against a standard less exacting than that of probable cause. These courts have, by and large, upheld warrantless searches by school authorities provided that they are supported by a reasonable suspicion that the search will uncover evidence of an infraction of school disciplinary rules or a violation of the law.

*T.L.O.,* 469 U.S. at 331–34 n. 2, 105 S.Ct. at 737–38 n. 2 (citations omitted); *see, e.g., In re William G.,* 40 Cal.3d 550, 709 P.2d 1287, 221 Cal.Rptr. 118 (1985); *Matter of Gregory M.,* 82 N.Y.2d 588, 606 N.Y.S.2d 579, 627 N.E.2d 500 (1993) ("We agree that for searches by school authorities of the persons and belongings of students, such as that conducted in *New Jersey v. T.L.O.* ... the reasonable suspicion standard adopted in that case for Fourth Amendment purposes is also appropriate under our State Constitution (N.Y. Const., art. I, § 12)); Comment, *Students and the Fourth Amendment: "The Torturable Class,"* 16 U.C.Davis L.Rev. 709, 723 (1983).

We emphasize that the exception to the warrant requirement of article I, section 7 of the Hawai'i Constitution, and the relaxation of the probable cause standard to one of reasonable suspicion that we prescribe in the present case, are strictly limited to the school context and the unique balance of interests present therein.

## C. *Individualized Suspicion*

Relying on *Burnham v. West,* 681 F.Supp. 1160 (E.D.Va.1987), and *In re William G., supra,* Minor contends that the search of her purse was unlawful because "[t]here was a complete lack of individualized suspicion that [she] possess[ed] marijuana." The facts in the case before us, however, are distinguishable from the facts in *Burnham* and *William G.;* therefore, we believe Minor's reliance on those cases is misplaced.

In *Burnham,* a teacher detected a strong odor of marijuana in the hallways near the cafeteria at a time when classes were in progress and no students were in the halls. The scent of marijuana was reported to the principal, and when his cursory search for physical evidence proved unsuccessful, he ordered a search of all students' pocketbooks and bookbags, and of male students' pockets. *Burnham,* 681 F.Supp. at 1163–64. The court found the search to be a severe invasion of the expected privacy which demanded "individualized suspicion" in order to satisfy the "justified at its inception" prong of the "reasonable suspicion" standard. *Id.* at 1165–66. The court held that "the searches were unjustified *ab initio* for lack of individualized suspicion." *Id.* at 1166. The places where the scent was detected were open hallways rather than confined areas to which only certain individuals had access, and the fact that these hallways led to the cafeteria indicated that nonstudents would reasonably be expected to use them during the time in question. *Id.* Therefore, the court articulated that the "suspicion ... could not reasonably be narrowed even to the entire student body." *Id.*

In *William G.,* a student was caught concealing marijuana in his calculator case. The court held that the fact that the student (1) was truant from class, (2) was engaged in "furtive gestures" in attempting to hide his calculator case from view of the assistant principal, and (3) demanded a warrant did not create a reasonable suspicion upon which to base the search. *Id.* at 566–67, 709 P.2d at 1297, 221 Cal.Rptr. at 128. Reasonable suspicion "requires articulable facts, together with rational inferences from those facts, warranting an objectively reasonable suspi-

cion that the student or students to be searched are violating or have violated a rule, regulation, or statute." *Id.* at 564, 709 P.2d at 1295, 221 Cal.Rptr. at 126 (citations omitted). The assistant principal had no prior information which led him to believe that the student was in possession of marijuana, or that the student had otherwise violated the law or a school rule. *William G.*, 40 Cal.3d at 566, 709 P.2d at 1297, 221 Cal.Rptr. at 128. The court, therefore, concluded that the search of the student's calculator case was illegal; consequently, the evidence obtained was inadmissible. *Id.* at 567, 709 P.2d at 1298, 221 Cal.Rptr. at 128.

In *T.L.O.*, "[b]ecause the search of T.L.O.'s purse was based upon an individualized suspicion that she had violated school rules," 469 U.S. at 342 n. 8, 105 S.Ct. at 743, the Court declined to "consider the circumstances that might justify school authorities in conducting searches unsupported by individualized suspicion." *Id.* However, it noted that in contexts other than school searches, individualized suspicion has usually been a prerequisite to a constitutional search or seizure. *Id.* An exception has been made "only where the privacy interests implicated by a search are minimal and where other safeguards are available to assure that the individual's reasonable expectation of privacy is not subject to the discretion of the official in the field." *Id.; see also William G.*, 40 Cal.3d at 568, 709 P.2d at 1299, 221 Cal.Rptr. at 130 ("A rule requiring individualized suspicion discourages searches of a group, class, or entire student body where the school official has reasonable suspicion that there has been a violation of the law but is unable to focus that suspicion on a particular individual.") (Bird, C.J., concurring and dissenting); *Burnham*, 681 F.Supp. at 1165–66.

■ Because a search of a student's wallet, purse or other bag carried on his or her person is "undoubtedly a severe violation of subjective expectations of privacy," *T.L.O.*, 469 U.S. at 338, 105 S.Ct. at 741, we conclude that "individualized suspicion" is a necessary element in determining reasonableness where, in this case, the principal emptied the contents of Minor's purse.

■ Here, the odor of burning marijuana emanated from a confined area frequented by individuals who smoked marijuana. School officials did not observe any one else in the area except for Minor and three other students. Their suspicion could be reasonably narrowed to the four students found in the "Tunnel" and further narrowed to the Minor because she was one of two students carrying a purse. Thus, we conclude that the individualized suspicion element of the reasonableness standard was met, and the search was lawfully conducted.

## IV. *CONCLUSION*

Based upon the foregoing discussion, we affirm.

LEVINSON, Justice, concurring.

I am deeply troubled by today's decision. As the majority acknowledges, "children in school have legitimate expectations of privacy which are protected by article I, section 7 of the Hawai'i Constitution and the fourth amendment to the United States Constitution[.]" Majority opinion at 646, 651–652. In my view, these legitimate expectations of privacy are in no way diminished by virtue of a citizen's lawfully mandated presence within the public school environment. Moreover, even in school, students retain the right to be free from unreasonable searches and seizures, *id.* at 649, conducted by "public school officials [who] act as representatives of government," *id.* at 646, and, thus, as surrogate police officers when conducting criminal investigations.

On the other hand, the fact that too many of our state and nation's public schools have become virtual war zones, generating an atmosphere that is antithetical to the education and training of young people, is intolerable and simply cannot be ignored. Although painful and fraught with risk, I must agree that "some easing of the restrictions to which searches by public authorities are ordinarily subject," *New Jersey v. T.L.O.*, 469 U.S. 325, 340, 105 S.Ct. 733, 742, 83 L.Ed.2d 720 (1985), seems to be necessary to ameliorate the crisis.

It is only because "the exception to the warrant requirement of article I, section 7 of the Hawai'i Constitution, and the relaxation of the probable cause standard to one of reasonable suspicion that we prescribe in the present case, are *strictly* limited to the school context and the *unique* balance of interests present therein," majority opinion at 654 (emphasis added), that I concur in the judgment of the court.