[910 NE2d 419, 882 NYS2d 671]

In the Matter of ELVIN G., a Person Alleged to be a Juvenile Delinquent, Appellant.

Argued March 25, 2009; decided May 7, 2009

**APPEARANCES OF COUNSEL**

*Legal Aid Society,* New York City (*Raymond E. Rogers, Steven Banks* and *Tamara A. Steckler* of counsel), for appellant.

*Michael A. Cardozo, Corporation Counsel,* New York City (*Edward F.X. Hart* and *Leonard Koerner* of counsel), for respondent.

**OPINION OF THE COURT**

MEMORANDUM.

The order of the Appellate Division should be reversed, without costs, and the matter remitted to Family Court for

further proceedings in accordance with this memorandum.

Under CPL 710.60, applicable to juvenile delinquency proceedings pursuant to Family Court Act § 330.2 (1), a suppression hearing is required if the accused "raise[s] a factual dispute on a material point which must be resolved before the court can decide the legal issue of whether evidence was obtained in a constitutionally permissible manner" (*People v Burton*, 6 NY3d 584, 587 [2006] [internal quotation marks and citation omitted]). The sufficiency of the allegations "should be (1) evaluated by the face of the pleadings, (2) assessed in conjunction with the context of the motion and (3) evaluated by defendant's access to information" (*People v Bryant*, 8 NY3d 530, 533 [2007]; *see also People v Mendoza*, 82 NY2d 415, 426 [1993]).

In this case, according to Elvin G., the school dean ordered all of the students in the classroom to stand and empty their pockets in an attempt to discover a cell phone or electronic device that had disrupted the class. In contrast, the presentment agency offered a different factual scenario, claiming that the dean had asked the students to put their book bags on their desks and Elvin had voluntarily removed a knife from his pocket. If the dean recovered the knife because it was in "plain view," as argued by the presentment agency, the constitutional question becomes academic. Unlike the dissent, in applying the *Mendoza* factors, we conclude that the record was insufficiently developed to properly determine whether a search occurred and, if so, whether it was reasonable as a matter of law under the circumstances of this case (*see New Jersey v T. L. O.*, 469 US 325 [1985]; *Vernonia School Dist. 47J v Acton*, 515 US 646 [1995]; *Matter of Gregory M.*, 82 NY2d 588 [1993]).

PIGOTT, J. (dissenting). Because, in my view, Family Court properly denied respondent's motion for a suppression hearing, I respectfully dissent.

It is clear from the facts presented (and even those presented by respondent), that the dean was justified in directing the students to empty their pockets. There was a disruption in the classroom by a noise from a cell phone or other electronic device and it was evident that one of the students was violating school rules. In such a situation, the scope of the search here was reasonably related to the objectives of the search (i.e., finding the offending article) and was not excessively intrusive.

As a general rule, a court may refuse to conduct a suppression hearing if respondent's allegations do not "lay out a factual

scenario which, if credited, would have warranted suppression" (*People v Mendoza*, 82 NY2d 415, 432 [1993]). Here, the dean's demand that all the students empty their pockets constituted a search (*see Matter of Bernard G.*, 247 AD2d 91, 94 [1st Dept 1998] [officer's direction that juvenile empty his pockets after pat-down search revealed no weapon "was the equivalent of searching his pockets"]; *People v Lipscomb*, 179 AD2d 1043 [4th Dept 1992]). But that is only the beginning of the inquiry.

In *New Jersey v T. L. O.* (469 US 325 [1985]),[1] the United States Supreme Court concluded that the Fourth Amendment does indeed apply to searches of students by school authorities (*id.* at 333-337). After reaching that conclusion, the Court then observed that whether a search is "reasonable" under the Fourth Amendment "depends on the context within which [the] search takes place." The standard to be applied "requires 'balancing the need to search against the invasion which the search entails' " (*id.* at 337 [citation omitted]). This, in turn, requires the balancing of "the individual's legitimate expectations of privacy and personal security" with "the government's need for effective methods to deal with breaches of public order" (*id.*). The Court then crafted the following rule:

> "[T]he legality of a search of a student should depend simply on the reasonableness, under all the circumstances, of the search. Determining the reasonableness of any search involves a twofold inquiry: first, one must consider 'whether the . . . action was justified at its inception,' *Terry* v. *Ohio*, 392 U. S., at 20; second, one must determine whether the search as actually conducted 'was reasonably related in scope to the circumstances which justified the interference in the first place' [*Terry*, 392 US at 20]. Under ordinary circumstances, a search of a student by a teacher or school official will be 'justified at its inception' when there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school. Such a search will be permissible in its scope when the measures

---

1. In *T. L. O.*, the school student had been caught smoking in a school bathroom and an assistant vice principal searched the student's purse looking for cigarettes and found marihuana rolling papers, a pipe and other incriminating evidence that could lead one to believe that she was dealing drugs in the school.

adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and the sex of the student and the nature of the infraction" (*T. L. O.*, 469 US at 341-342 [emphasis supplied]).

Significantly, the Court declined to address whether individualized suspicion was an essential element of the reasonableness standard relative to school searches, and observed that, with regard to other scenarios, it had held that although "some quantum of individualized suspicion is usually a prerequisite to a constitutional search or seizure, . . . the Fourth Amendment imposes no irreducible requirement of such suspicion" (*id.* at 342 n 8 [citations omitted]). That fact was not lost on this Court in *Matter of Gregory M.* (82 NY2d 588 [1993]),² where this Court stated that "[t]here may be circumstances in which, because the privacy interests involved in the case are minimal and are overborne by the governmental interests in jeopardy if a higher standard were enforced, a search may be reasonable despite the absence of [individualized] suspicion" (*id.* at 593).

To be sure, there are circumstances where the conduct of the school officials can be deemed overly intrusive (*see Beard v Whitmore Lake School Dist.*, 402 F3d 598 [6th Cir 2005] [strip search of male and female students to recover money stolen from a locker overly intrusive and violative of Fourth Amendment]; *Thomas ex rel. Thomas v Roberts*, 323 F3d 950 [11th Cir 2003] [mass strip search of students to recover stolen money unreasonable]). However, such was not the case here. School officials had a legitimate interest in ending the disruption of the classroom and the students privacy rights were not so invaded by the request that they empty their pockets that respondent's knife should have been suppressed. There is something to be said for affording school administrators some leeway in ensuring that school order is maintained for the benefit of the non-disruptive students.

As a result, in my view, Family Court properly denied respondent's motion for a suppression hearing, and therefore I would affirm the order of the Appellate Division.

---

2. In *Gregory M.*, this Court, in applying the balancing test set forth in *T. L. O.*, found to be proper a security officer's search of a student's book bag after the officer heard a metallic "thud" when the student placed the bag on a shelf. The officer ran his fingers outside the surface of the bag and detected the outline of a gun. The bag was taken to the dean's office where a search was conducted, uncovering the gun.

Judges CIPARICK, GRAFFEO, READ, SMITH and JONES concur in memorandum; Judge PIGOTT dissents and votes to affirm in an opinion; Chief Judge LIPPMAN taking no part.

Order reversed, etc.

